Robert Charles GRUNSFELD, Appellant,

v.

The STATE of Texas, Appellee.

Jerred J. HUNTER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 1037–91, 1092–91.

Court of Criminal Appeals of Texas, En Banc.

Oct. 28, 1992.

Rehearing Denied Dec. 9, 1992.

John D. Nation, Dallas, for appellant Grunsfeld.

John Vance, Dist. Atty. and Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

6. Applicant's remaining allegations are denied on the basis of the trial court's findings of fact and conclusions of law.

Anthony D. Lyons, Dallas, for appellant Hunter.

Tim Curry, Dist. Atty., and C. Chris Marshall, Betty Marshall & Steven W. Conder, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON PETITIONS FOR DISCRETIONARY REVIEW

MALONEY, Judge.

In separate cases, appellants Robert Charles Grunsfeld and Jerred J. Hunter[1] were each convicted by a jury of aggravated sexual assault and sentenced to life imprisonment. The Court of Appeals for the Fifth District in Dallas County reversed Grunsfeld's conviction and remanded the case for a new trial. *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991). The Fort Worth Court of Appeals affirmed Hunter's conviction in an unpublished opinion. *Hunter v. State*, No. 2–90–170–CR (Tex.App.—Fort Worth Aug. 30, 1991). We have consolidated these two cases, as they both seek review of the same issue.

We granted the State's Petition for Discretionary Review in *Grunsfeld* and Appellant's Petition for Discretionary Review in *Hunter* to determine whether Article 37.-07(3)(a) V.A.C.C.P., as amended, allows admission of unadjudicated extraneous offense evidence in the punishment phase of a trial on a noncapital offense. We will affirm the decision of the Court of Appeals in *Grunsfeld* and reverse the decision of the Court of Appeals in *Hunter*. We remand both cases to their respective trial courts for a new punishment hearing pursuant to article 44.29(b) V.A.C.C.P. A brief discussion of the facts of each case is helpful in understanding the context and application of article 37.07(3)(a).

The victim testified at appellant Grunsfeld's trial that following a date with Grunsfeld, he took her to his mother's house where he repeatedly raped her. The victim further testified that Grunsfeld as-

saulted her with a stun gun throughout the alleged offense. In the punishment portion of the trial, the State called a witness who testified that Grunsfeld assaulted her several months prior to the subject offense. The State also called two other witnesses who each testified that they had been raped by Grunsfeld several months after the subject offense. Grunsfeld objected claiming that the witnesses' testimony constituted extraneous offense evidence and did not fall within article 37.07(3)(a). The trial court nevertheless allowed the testimony of these witnesses over Grunsfeld's objection. Grunsfeld's mother testified that Grunsfeld had never been convicted of a felony offense, thus establishing his eligibility for probation. The Dallas Court of Appeals held that the trial court erred in admitting the evidence of the unadjudicated extraneous offenses and reversed and remanded the case to the trial court. *Grunsfeld.*

During appellant Hunter's trial, the victim testified that she gave Hunter a ride in her automobile after a meeting which they had both attended. Upon arrival at Hunter's supposed destination, a deserted building, the victim testified that Hunter sexually assaulted her and then drove to a second location where he sexually assaulted her again. She further testified that Hunter choked her with his arm, causing her to lose consciousness and that Hunter threatened to kill her if she reported the incident. At the punishment phase of the trial the State called D.B. who testified that on the day before the subject offense she gave appellant Hunter a ride home from a school that they both attended. When they arrived at the designated location, Hunter sexually assaulted her at gunpoint and choked her with his arm. D.B. further testified that Hunter threatened to kill anyone whom she told about the incident. Appellant Hunter timely objected to D.B.'s testimony as inadmissible under article 37.-07(3)(a) and as not relevant under the Rules of Evidence. Hunter's mother testified that Hunter had not previously been convicted of a felony, thus establishing his eligibility for probation. The Fort Worth

---

**1.** The term "appellants" shall hereinafter refer to Grunsfeld and Hunter collectively.

Court of Appeals affirmed Hunter's conviction, holding that article 37.07(3)(a) was intended to have the same meaning and effect as article 37.071(a)[2], consequently permitting evidence of unadjudicated extraneous offenses during punishment of non-capital offenses.

The relevant portion of article 37.07(3)(a), amended effective September 1, 1989, provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Article 37.07(3)(a) V.A.C.C.P. (Vernon Supp.1991) (emphasis on portion added by amendment).

The State contends that the amendment to article 37.07(3)(a) effectuates the legislature's intent to overturn this court's ruling in *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr. App.1989) (opinion on rehearing)[3], by now allowing the admission of "any matter the court deems relevant to sentencing," including unadjudicated extraneous offenses, consistent with their admission in capital cases. The State argues that the term "including" is one of inclusion, not limitation and therefore, admissible evidence is not *limited* to a defendant's prior criminal record, general reputation and character, but may include *anything* the trial court deems relevant, including unadjudicated extraneous offense evidence. Appellants claim that the plain language of the amended provision and the legislative history support a conclusion that evidence of unadjudicated extraneous offenses remains inadmissible under article 37.07(3)(a).

A primary tenet of statutory construction is the importance of legislative intent. *Ward v. State*, 829 S.W.2d 787, 790 (Tex.Cr.App.1992); *Dillehey v. State*, 815 S.W.2d 623, 625 (Tex.Cr.App.1991); TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 1988). Such intent may be derived from the language of the statute, its legislative history and the "context of the entire law in which it is written." *Grunsfeld*, 813 S.W.2d at 168. As pointed out in the State's brief, when examining amendments to existing legislation, it is presumed that the legislature was aware of caselaw affecting or relating to the statute. *Welch v. Welch*, 369 S.W.2d 434, 437 (Tex.Civ.App.— Dallas 1963, no writ).

In light of the legislative history and the timing of the amendment, and in an effort to ascribe meaning to each word contained in the subject provision, as amended, we agree with the Dallas Court of Appeals in *Grunsfeld* in construing article 37.07(3)(a), to provide that even if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment, *unless* (1) it is permitted by the Rules of Evidence[4], and (2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.-07(3)(a)'s definition of prior criminal record.[5]

---

2. At the time of the subject offenses, Article 37.071(a) provided in relevant part that "[i]n the [punishment phase of a capital offense], evidence may be presented as to any matter that the court deems relevant to sentence." Article 37.071(a) V.A.C.C.P.

3. In *Murphy*, we held that extraneous offense evidence was not admissible at punishment to attack the "suitability" of the defendant for probation. *Murphy*, 777 S.W.2d at 67 (opinion on rehearing).

4. Article 37.07(3)(a) was amended in 1985 to provide that evidence offered thereunder must be permitted by the Rules of Evidence.

5. The Dallas Court of Appeals held that:
> ... evidence of extraneous, unadjudicated offenses, even if deemed relevant to sentencing by the trial court, would have to meet two tests. First, it would have to be evidence permitted by the rules of evidence. Second, if it is part of a defendant's prior criminal record, as it has been considered in the past, it must comply with the statutory definition of that term.

We note that these two criteria did not come about as a result of the 1989 amendment, but were in place before the recent amendment. The only change accomplished by the amendatory language is the statutory recognition that evidence *other than* prior criminal record, general reputation and character is admissible. At the time of the passage of the subject amendment, this issue was questionable under this court's original opinion in *Murphy*. To that extent, we agree with the State that the subject amendment was very likely directed at this court's opinion in *Murphy*.[6] Although not patently apparent from the face of the original opinion, in separate dissenting opinions thereto, both Presiding Judge Onion and Judge White construed the plurality opinion in *Murphy* to hold that article 37.07(3)(a), as it then existed, prohibited the admission of any evidence other than prior criminal record, general reputation, and character.[7] Based upon this view of the court's original opinion, it is probable that the legislature also reached the same conclusion in reading the original opinion and was prompted to amend article 37.07(3)(a) by insertion of the word "including" to clarify that the article's list of admissible evidence was *not* exhaustive and other evidence is admissible so long as it is deemed relevant to sentencing.

Although the amendment's embrace of the term "including" renders the list following it nonexclusive[8], retention of the

---

*Grunsfeld,* 813 S.W.2d at 166. Although we agree with the court of appeals' conclusion that two limiting factors apply to the admission of extraneous offense evidence, we do not see the necessity to apply them in the order recited by that court. Also, if the evidence fails to satisfy one of the limitations, we see no need to advance to an analysis of the evidence under the other limiting factor.

6. The State is overly broad, however, in its contention that the amendment evidenced the legislature's disapproval of this court's decision in *Murphy,* as the State fails to delineate between this court's *original* opinion and its opinion on *rehearing.* The subject amendment was passed by Senate vote on May 28, 1989 and by House vote on May 29, 1989, three weeks before this court rendered its decision on rehearing on June 21, 1989.

The State argues that the legislature's amendment of article 37.07(3)(a) was an attempt to overturn this court's holdings in *Murphy,* citing *Murphy,* 777 S.W.2d at 60, 61 and 64. The State further contends that "it is presumed that the legislature was aware of these holdings when it amended article 37.07(3)(a)." The State also supports its argument by pointing to Judge Duncan's concurring opinion in which he noted that it was not the function of this court to expand article 37.07(3)(a) beyond its limiting language. The State's reliance on this court's holdings in *Murphy* on pages 60, 61, 64 and Judge Duncan's concurring opinion all refer to our decision on rehearing, which the legislature could not possibly be "presumed" to be aware of since the opinion on rehearing was not delivered until several days after the amendment was passed by both houses and signed by the governor.

7. This court's opinion on rehearing clarified that point. On rehearing, this court stated that article 37.07(3)(a), as it then existed, "is not exhaustive in setting out evidence admissible at the punishment phase to show circumstances of the offender." *Murphy,* 777 S.W.2d at 64 (opinion on rehearing). Evidence such as "family background, religious affiliation, education, employment history and the like are appropriate considerations in assessment of punishment." *Id.* However, the court also said that the State was "limited in form ... to prior criminal record, and opinion or reputation testimony" when presenting character evidence under article 37.07(3)(a), as it then existed. *Id.* at 61 (opinion on rehearing).

Following *Murphy,* we confirmed that evidence other than that specifically identified in the article 37.07 was admissible at punishment. *Hedicke v. State,* 779 S.W.2d 837 (Tex.Cr.App. 1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990). In *Hedicke,* we recognized that opinion evidence to prove character was also admissible although, pursuant to *Murphy,* evidence of specific conduct was still inadmissible. *Id.* at 839, 842.

8. The Code Construction Act provides that:

'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.

TEX.GOV'T CODE § 311.005(13) (Vernon Supp. 1992). Clearly the reference to prior criminal record, general reputation and character does not amount to a list of "limitation or exclusive enumeration". However, the Code Construction Act does not provide that use of the terms "includes" or "including" will render any following list of components immune from limitations the legislature may choose to impose. Accordingly, insertion of the term "including" does not mean that "any matter the court deems relevant to sentencing" is not subject to other limitations the legislature may see or may have seen fit to impose.

term "prior criminal record" and its definitional provision indicates an intent to maintain limitations on the admission of extraneous offense evidence, including unadjudicated extraneous offenses.[9] There is no other apparent reason for its retention. If, as the State contends, the retained definition does not control admission of extraneous offense evidence, its retention in article 37.07(3)(a) would serve no purpose. Further, as appropriately noted by the Dallas Court of Appeals, "[i]t would not make sense that the legislature intended that extraneous, unadjudicated offenses and their details be admissible, but that prior convictions must be final before being admissible and even then that details of the underlying offenses are to be excluded." *Grunsfeld*, 813 S.W.2d at 172. Why would the legislature insist that a conviction be "final," in assurance that it comported with due process safeguards, yet admit evidence of unadjudicated offenses which have not been tested by the rigors of due process? Our construction gives meaning to the provision *as a whole* and accounts for each portion of the questioned article. The construction urged by the State, that evidence of extraneous offenses is now admissible despite the retained reference to and definition of "prior criminal record" would render a large portion of article 37.07(3)(a), useless, contrary to well-established rules of construction which presume that each word contained in a statute is used for a purpose.[10] *See Polk v. State*, 676 S.W.2d 408, 410 (Tex.Cr.App.1984) (citations omitted); *Huggins v. State*, 795 S.W.2d 909, 912–13 (Tex.App.—Beaumont 1990, pet. ref'd) (concurring opinion).

The State's further contention that article 37.07(3)(a), should be applied as broadly as article 37.071(a), is also unfounded in light of the retained portions of the provision. The form of the Bill submitted to the Senate by the Senate Committee on Criminal Justice proposed deletion of article 37.07's references to prior criminal record, general reputation and character and the definition of prior criminal record. However, when brought up for consideration by the Senate, a floor amendment was offered and passed which reinstated those references and definition.[11] If the legislature

---

**9.** The definition of "prior criminal record" has not been modified since its inclusion in article 37.07(3)(a) in 1967. Pursuant to this definition, this court has consistently held that evidence of specific acts (good or bad), including extraneous, unadjudicated offenses are inadmissible. *Hedicke*, 779 S.W.2d at 839; *Drew v. State*, 777 S.W.2d 74 (Tex.Cr.App.1989); *Murphy*, 777 S.W.2d at 61 (opinion on rehearing); *Elder v. State*, 677 S.W.2d 538, 539 (Tex.Cr.App.1984); *Ramey v. State*, 575 S.W.2d 535, 537 (Tex.Cr.App.1978); *Sherman v. State*, 537 S.W.2d 262, 263–64 (Tex.Cr.App.1976); *Lege v. State*, 501 S.W.2d 880, 881–82 (Tex.Cr.App.1973); *Mullins v. State*, 492 S.W.2d 277, 278–79 (Tex.Cr.App. 1973). We see no reason to construe that definition any differently now.

**10.** We acknowledge that numerous courts of appeal, with the exception of *Grunsfeld*, *Jolivet v. State*, 811 S.W.2d 706 (Tex.App.—Dallas 1991, pet. granted) and *Blackwell v. State*, 818 S.W.2d 134, 140–41 (Tex.App.—Waco 1991, pet. filed), have held that the subject amendments render article 37.07(3)(a) and article 37.071(a) virtually identical in language and therefore, in application. *Slott v. State*, 824 S.W.2d 225 (Tex.App.—Beaumont 1992, pet. filed); *Gallardo v. State*, 809 S.W.2d 540, 541–43 (Tex.App.—San Antonio 1991, pet. granted); *Hubbard v. State*, 809 S.W.2d 316, 319–20 (Tex.App.—Fort Worth 1991, pet. granted); *Cannon v. State*, 807 S.W.2d 631 (Tex.App.—Houston [14th Dist.] 1991);

*Hunter v. State*, 805 S.W.2d 918, 920–21 (Tex. App.—Beaumont 1991, pet. granted); *McMillian v. State*, 799 S.W.2d 311, 313–14 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State*, 795 S.W.2d at 911. However, none of these courts found it necessary to entertain any discussion of legislative history. Based solely upon the similarity of the language between article 37.07(3)(a) and 37.071(a), they summarily concluded that since evidence of extraneous offenses is admissible in the capital context it must also be admissible now in the noncapital context. Only *Gallardo* even recognized the retention in the statute of the reference to prior criminal record and its definition, but apparently dismissed its retention as meaningless. *Gallardo*, 809 S.W.2d at 542.

**11.** The court of appeals in *Grunsfeld* detailed the legislative history of the subject amendment and our own research has confirmed the accuracy of that discussion. The subject amendment was passed by the 71st Legislature as a part of a larger piece of legislation—House Bill 2335. When initially passed by the House, HB 2335 did not contain an amendment to article 37.07 § 3(a). Upon receipt of HB 2335 by the Senate, it was referred to the Senate Committee on Criminal Justice (the "Committee"). The Committee's Report to the full Senate proposing changes to HB 2335 contained an amendment to 37.07 § 3(a) which deleted the reference to a

did not intend that extraneous offense evidence admissible at the punishment phase be limited by the term "prior criminal record", the passage of the floor amendment would have been nonsensical.

■ Here, the trial courts allowed evidence of unadjudicated, extraneous offenses during the punishment phase in the trials of two noncapital offenses.[12] Pursuant to this court's historical construction of the term "prior criminal record" the evidence of extraneous unadjudicated offenses was improperly admitted. Accordingly, we find that the trial courts in both *Grunsfeld* and *Hunter* abused their discretion in admitting evidence of unadjudicated extraneous offenses under article 37.07 § 3(a).[13]

■ When we find error in the proceedings of the court below, the error is reversible unless we determine "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Harris v. State*, 790 S.W.2d 568, 584 (Tex.Cr.App.1989); TEX.R.APP.P. 81(b)(2). The evidence admitted in both cases implicated appellants in offenses which were very similar in detail to the subject offenses. In light of its highly prejudicial nature, we cannot say beyond a reasonable doubt that the admission of the evidence by the trial courts did not contribute to the punishment of appellants.

For the reasons herein stated, we affirm the decision of the court of appeals in *Grunsfeld*, reverse the decision of the court of appeals in *Hunter* and remand both cases to their respective trial courts for proceedings consistent with article 44.-29(b) V.A.C.C.P.

MILLER, J. joins with note: Although I am satisfied that Judge MALONEY's analysis is most adequate to resolve the issue presented herein, I also join Judge CLINTON's concurring opinion.

CLINTON, Judge, concurring.

In enacting the 1989 amendment in question to Article 37.07, § 3(a), V.A.C.C.P. ("§ 3(a)"), the Legislature created a conundrum that has drawn several disparate, usually subjective, answers from some courts of appeals to which the riddle was posed. A textual literalist would quickly solve the enigma by applying "the literalness test" to the clear meaning of the

defendant's prior criminal record, his general reputation and character and the definition of prior criminal record. As proposed by the Committee, the amendment revised article 37.07 § 3(a) to read virtually identically to article 37.071(a). As stated by the court of appeals in *Grunsfeld*, "[o]bviously, the deleted language would not be needed if evidence 'as to any matter the court deems relevant to sentencing' was to be allowed." *Id.* However, for unknown reasons, two days later when the Committee's Report was brought up for consideration before the Senate, Senator McFarland (Senate sponsor of HB 2335 and chair of the Committee) offered a floor amendment to the form of HB 2335 proposed by the Committee's Report. The floor amendment revised the Committee's version of the amendment to article 37.07 § 3(a) to retain the references to a defendant's prior criminal record, general reputation and character as well as the definition of prior criminal record. McFarland's floor amendment passed and no further changes were made to the amendment of article 37.07 § 3(a) before final passage of HB 2335. Review of the legislative history does not reveal any explanation for this apparent change of heart. We can think of no other reasonable explanation for the retention

of those references and the accompanying definition other than the intent of the legislature to maintain a limitation on the admission of extraneous offenses at punishment in a noncapital offense. As aptly stated by Judge Burgess in his concurring opinion to the court of appeals decision in *Huggins*, "[t]he legislature could have deleted all references to 'prior criminal record' but chose not to do so." *Huggins*, 795 S.W.2d at 913. The legislative history shows that the legislature clearly considered amending article 37.07 § 3(a) to be identical to article 37.071(a), but deliberately chose not to do so.

12. We note that appellants offered evidence only to establish that they were eligible for probation. Such a showing did not "open the door" to evidence of specific conduct. *Murphy*, 777 S.W.2d at 68.

13. We will not reach an analysis of the admissibility of the subject evidence under the Rules of Criminal Evidence or an analysis of its "relevancy to sentence" as determined by the trial court since we hold that the evidence of appellants' specific conduct is inadmissible under article 37.07 § 3(a)'s definition of "prior criminal record."

unambiguous term "sentence" as defined and used in our statutes. See, e.g., Article 42.02, V.A.A.C.P. ("sentencing" orders punishment carried into execution). But today in the instant causes this Court examines broader issues to find its own answers, and I agree with its results. My own effort seeks to sort out contentious positions and tenuous propositions to the end that "inconsistency is ... removed by reasonable construction." Tex.R.Cr.Evid.Rule 101(c).

## I

Apparently the first time an appellate court addressed amended § 3(a) the situation involved extraneous unadjudicated offenses being admitted in a punishment proceeding in which an application for probation was at issue. *Huggins v. State*, 795 S.W.2d 909 (Tex.App.—Beaumont 1990), PDR refused.[1] The Beaumont Court concluded that evidence of such offenses was admissible for three separate reasons; the third implicates the central prosecutorial contention of choice for favorable solution

to the problem: the "same language" theory. Accordingly, it is first considered here.[2]

## A

The *Huggins* court divided over resolution of the contention. The majority thought there is "no realistic difference or distinction" between permissive language of Article 37.071(a) and that used in the amendment to § 3(a); *ergo,* "evidence and proof of unadjudicated offenses at the punishment stage is admissible." *Id.,* at 911. The concurring opinion believed Article 37.-071 is "a completely different punishment scheme" from article 37.07, and saw "a marked difference" between actual language in the sections. *Id.,* at 912.

In its unpublished opinion in the instant *Hunter* cause, much like the Beaumont Court, the Fort Worth Court reasoned, *viz:*

"We overrule Hunter's first point because article 37.07, section 3(a) now

---

1. Actually *McMillian v. State,* 799 S.W.2d 311 (Tex.App.—Houston [14th] 1990) PDR granted, was delivered five days before *Huggins v. State,* supra. However, *McMillian* was decided on the separate distinct theory that since consideration of probation is an "essential part of the sentencing process," testimony relevant to "the question of appellant's fitness for probation is admissible"—there being no conflict between § 3(a) and Tex.R.Cr.Evid. 404 "notwithstanding the fact that subpart (c) of Rule 404 exempts only Article 37.071 [V.A.C.C.P.]." *Id.,* at 313–314. Although probation was at issue in *Huggins,* see PDR, at 7, 11, 12, the Beaumont Court of Appeals did not consider that theory, unless its cryptic allusion to *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App.1988), is to indicate it did. See note 2, *post.* Both appellants in the instant causes did apply for and the court charged the jury on probation, so the theory will be examined *post.*

2. The *Huggins* majority also advanced two other bases for admitting evidence of extraneous unadjudicated offenses, *viz:* first, that the phrase is "additional to and independent of the 'prior criminal record of the defendant' ... and relevant evidence is also independent of and separate from evidence of the defendant's general reputation and his character;" second, that by providing "any matter the court deems relevant to sentencing is admissible," the Legislature "invoke[d] the abuse of discretion test" and "the solons overrule *Murphy v. State,* 777 S.W.2d 44 (Tex.Crim.App.1988)." *Id.,* at 911.

Both bases will be treated in Part I B, at 538 *post;* suffice to note here that presently pending review are several cases following one or both, e.g., *Hunter v. State,* 805 S.W.2d 918 (Tex.App.—Beaumont 1991) PDR granted June 5, 1991 (both, no probation); *Hubbard v. State,* 809 S.W.2d 316, at 319–320 (Tex.App.—Fort Worth 1991), PDR granted September 11, 1991 (both, no probation); *Gallardo v. State,* 809 S.W.2d 540, at 543 (Tex.App.—San Antonio 1991), PDR granted September 11, 1991 (first, no probation).

Others were refused with disclaimers, e.g., *Rexford v. State,* 818 S.W.2d 494 (Tex.App.—Houston [1st] 1991) (no probation), refused *Id.,* 823 S.W.2d 296 (Tex.Cr.App.1991), or for alternative "more compelling reason" for decision, e.g., *Zayas v. State,* 814 S.W.2d 509 (Tex.App.—Houston [14th] 1991) (probation testimony) PDR refused October 30, 1991. Apparently there is no PDR in *Cannon v. State,* 807 S.W.2d 631, at 635 (Tex.App.—Houston [14th] 1991) (no probation, but follows *McMillian v. State,* supra, see note 1).

*Holland v. State,* 820 S.W.2d 221, at 223 (Tex.App.—Fort Worth 1991) (no probation) PDRs filed January 22, 1992 and February 10, 1992 (split decision); *Brooks v. State,* 822 S.W.2d 765, at 769 (Tex.App.—Houston [1st] 1992) (no probation) PDR filed April 4, 1992; *Slott v. State,* 824 S.W.2d 225 (Tex.App.—Beaumont 1992) (no probation) PDR filed February 24, 1992) (split decision), are pending initial review under Tex.R.App.Pro. Rule 202(k).

makes admissible *any* evidence the court deems relevant to sentencing. [citation omitted]. The new version of the article uses the same language found in article 37.071(a) which governs capital sentencing procedures; the Court of Criminal Appeals has held that in that statute, the language allows for the admission of unadjudicated offenses. [citation omitted]. We see no reason why the legislature would incorporate the same language but give it a different meaning; and there is no evidence that they have done so. We conclude the language was intended to have the same meaning in 37.07 as it does in 37.071, thus providing for the admission of unadjudicated offenses during the punishment phase of trial. See *Gallardo v. State,* 809 S.W.2d 540, 541–42 (Tex.App—San Antonio 1991, pet. filed) (per curiam); *Huggins v. State,* 795 S.W.2d 909, 911 (Tex.App— Beaumont 1990, pet. ref'd; and *McMillian v. State,* 799 S.W.2d 311, 313 [Tex. App.—Houston [14th Dist.] 1990, pet. granted) (opinion on rehearing)."

Slip opinion, at 2–3.[3] Accordingly, the appellate prosecuting attorney urged, "This Court, however, need not conduct further review because the Court of Appeals' holding is based on the decision in *Huggins v. State,* which this Court *declined to review.*" State's Reply to PDR, at 3.[4]

In the instant *Grunsfeld* cause, however, the majority opinion critically reviewed

*McMillian,* supra n. 1, and *Huggins* and rejected those holdings and followings then extant, e.g., *Gallardo v. State,* supra n. 4 (also *Hubbard v. State,* supra, although it does not turn on this particular holding). *Grunsfeld v. State,* 813 S.W.2d 158, at 171–172 (Tex.App.—Dallas 1991), PDR granted December 4, 1991. Moreover, the dissenting opinion in *Grunsfeld* likewise disagreed with this part of *Huggins. Id.,* at 175, n. 2; see also *Jolivet v. State,* 811 S.W.2d 706, at 709 (Tex.App.—Dallas 1991) PDR granted (following *Grunsfeld* ).

In these circumstances the "same language" *ratio decidendi* of the majority opinion in *Huggins* and of the opinion in *Hunter* should be carefully examined, and to that purpose I now turn.

1

Article 37.07, § 3(a) was amended in 1989, by *inter alia* inserting the underscored phrase ("the phrase") to cause the operative portion of the first sentence to read:

"[E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the trial court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character."

In its *original* context, the phrase is essentially a restatement of the principle that is

---

**3.** Emphasis above supplied by the writer for the Fort Worth Court; all other emphasis is added throughout by the writer of this opinion unless otherwise indicated.

**4.** This Court did indeed refuse the petition for discretionary review of the September 5, 1990 decision *Huggins* on November 21, 1990. But we have made clear from the beginning that determining whether to grant review is an exercise of judicial discretion under Article V, § 5 and Article 4.04, § 2 and, like denial of certiorari by the Supreme Court of the United States, our refusal to review bestows no precedential value whatsoever on the opinion below.

Furthermore, this Court promulgated certain requirements and guidelines for presenting a proper petition for discretionary review. See Tex.R.App.Pro. Rule 202. The petition in *Huggins* did not contain an appendix including a copy of the opinions of the court of appeals as required by Rule 202(d)(7); it was thus refused

with the notation "No C.O.A. Opinion Attached," even though the petition is competently drawn in all other respects.

Manifestly, our refusing review in *Huggins* may not be taken as approval. We have granted review of other causes relying on or rejecting in whole or in part this aspect of *Huggins.* See, e.g., *Gallardo v. State,* 809 S.W.2d 540, at 542–543[3] (Tex.App.—San Antonio 1991) PDR granted September 11, 1991; *Grunsfeld v. State,* 813 S.W.2d 158, at 171–172 (Tex.App.—Dallas 1991) PDR granted December 4, 1991; *Jolivet v. State,* 811 S.W.2d 706 (Tex.App.—Dallas 1991) PDR granted October 16, 1991 (following *Grunsfeld* ); *Blackwell v. State,* 818 S.W.2d 134, at 140–141 (Tex.App.—Waco 1991) PDRs filed November 20, 1991 (following *Grunsfeld* ); *Torres v. State,* 818 S.W.2d 141, at 143 (Tex.App.— Waco 1991) vacated on other grounds, 825 S.W.2d 124 (Tex.Cr.App.1992).

"a presupposition involved in the very conception of a rational system of evidence." Blakely, *Article IV: Relevancy and Its Limits,* 20 Houston L.Rev. 151, at 152, n. 2 (1983 Tex.R.Evid. Handbook), quoting J. Thayer, *A Preliminary Treatise on Evidence at the Common Law* 264–265 (1898). But it is misleading "awkward wording" in a Texas statute prescribing matters for consideration in a noncapital case. "Sentencing" is a distinct proceeding to impose and order executed in a manner prescribed that punishment already adjudged by the court in accordance with a jury verdict or court finding as to proper punishment. Articles 42.01 and 42.02, V.A.C.C.P. In Texas, "any matter relevant to *sentencing*" will never be "any matter relevant to *punishment*" because the latter matters have been previously determined in a *"punishment* proceeding." See *Livingston v. State,* 542 S.W.2d 655, at 661, n. 4 (Tex.Cr. App.1976); *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr.App.1976) (concurring opinion, at 297).

Prosecutorial proponents of the amendment argue and, as indicated *ante,* some appellate courts accept that because an almost identical phrase appears in Article 37.071(a), it must have the same effect when incorporated in Article 37.07, § 3(a), i.e., unadjudicated extraneous offenses and specific acts of misconduct are now admissible in the punishment phase of a noncapital case. *Accord:* Comment, *Bringing Light to the Non-Capital Felony Punishment Phase: Article 37.07, Section 3a and Evidence of Unadjudicated Extraneous Offenses,* 44 Baylor L.Rev. 101 (1992), at 109–112 ff. Whether the contention has merit depends in the first place on a proper understanding and correct construction of Article 37.071(a). That raises the question of legislative meaning in the premises.

### 2

Before 1965 the trial of *every criminal case* in Texas was a unitary proceeding in which evidence on the merits and punishment was adduced for the factfinder to render a general verdict. Thereafter an "alternate procedure" was allowed initially for noncapital felony cases but later for *"all criminal cases,"* except misdemeanor cases within jurisdiction of justice and municipal court and capital cases, cf. former article 37.07 (1965 with 1967); the Court made clear that the provision for introducing evidence of prior criminal record "had no application to capital cases where the death penalty was being sought." *Vessels v. State,* 432 S.W.2d 108 (Tex.Cr.App.1968).

Meanwhile, early on legal scholars and others who seek to improve criminal law were working on a model penal code that proposed a bifurcated proceeding in capital cases. The phrase in question is but a portion of more comprehensive formulation found in the Model Penal Code § 210.6(2)— even before the Supreme Court struck down extant capital punishment schemes. (The American Law Institute, Proposed Official Draft, 1962). See attached Appendix 1.

Then in *Furman v. Georgia* (and *Branch v. Texas*), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court held simply and without explication that "the imposition and carrying out of the death penalty *in these cases* constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." Upon carefully examining the nine separate opinions supporting that holding, the consensus among interested commentators, concerned legislators and affected practitioners was that Chief Justice Burger most likely signaled an appropriate remedial approach, *viz:*

"While I would not undertake to make a definitive statement as to the parameters of the Court's ruling, it is clear that if state legislatures and the Congress wish to maintain the availability of capital punishment, significant statutory changes will have to be made. Since the two pivotal concurring opinions [of Justices White and Stewart, respectively] turn on the assumption that the punishment of death is now meted out in a random and unpredictable manner, legislative bodies may seek to bring their laws into compliance with the Court's ruling *by providing standards for juries and judges to follow in determining the*

*sentence in capital cases* or by more narrowly defining the crimes for which the penalty is to be imposed. [note omitted]. If *such standards can be devised or the crimes more meticulously defined, the result cannot be detrimental."*

*Id.,* at 400–401, 92 S.Ct., at 2809, 33 L.Ed. 2d, at 442.[5]

3

Responding to *Furman v. Georgia,* the State of Florida (and later other jurisdictions as well) drew on procedural provisions in the Model Penal Code. *Proffitt v. Florida,* 428 U.S. 242, at 248, nn. 5 and 6, 96 S.Ct. 2960, at 2964–2965, nn. 5 and 6, 49 L.Ed.2d 913, at 920, 921, nn. 5 and 6 (1976); cf. *Gregg v. Georgia,* 428 U.S. 153, at 193–194, n. 44, 96 S.Ct. 2909, at 2935, n. 44, 49 L.Ed.2d 859, at 886, n. 44 (1976).

The Florida scheme, consisting of three statutes, is reproduced from the opinion in *State v. Dixon,* 283 So.2d 1 (Fla.1973). See Appendix 2. The Supreme Court of Florida generally described it as "a system whereby the possible aggravating and mitigating circumstances are defined, but where the weighing process is left to the carefully scrutinized judgment of jurors and judges." *State v. Dixon,* supra, at 7.

Under Florida Statutes § 921.141, F.S.A., there is "a separate sentencing proceeding," at which "evidence *may* be presented as to any matter that the court deems relevant to sentence, and *shall* include mat-

ters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7) of this section." [6] While the statute does not expressly assign a burden of proof to either party, the Florida Supreme Court reasoned that any *aggravating* circumstance associated with commission of the substantive offense must necessarily be proved by the state beyond a reasonable doubt. *Dixon,* supra, at 9. The state and defendant or his counsel "shall be permitted to present argument for or against sentence of death." The jury is instructed to determine whether mitigating circumstances outweigh aggravating circumstances, and then "based on these considerations" whether defendant should be sentenced to life or death; its verdict is determined by majority vote, and is "only advisory." Regardless of the recommendation of the jury from evidence it heard, the court must weigh the particular aggravating and mitigating circumstances statutorily prescribed in deciding whether to enter a sentence of life or death; if it imposes a sentence of death the court shall make findings upon which its sentence is based as to the facts that sufficient aggravating circumstances exist as enumerated in subsection (6) and that there are insufficient mitigating circumstances as enumerated in subsection (7) to outweigh the aggravating circumstances. *Id.,* at 5. As the Florida Supreme Court emphasized, "[T]he procedure ... is not a mere counting pro-

5. For three most pertinent commentators contributing to such consensus, see Ehrhardt, Hubbard, et al., *The Aftermath of Furman: The Florida Experience,* 64 J.Crim.L. & C. 2 (1973), Part I at 5; Comment, *House Bill 200: The Legislative Attempt to Reinstate Capital Punishment in Texas,* 11 Houston L.Rev. 410 (1974), at 421; Note, *Is the Death Penalty Dead?,* 26 Baylor L.Rev. 114 (1974), at 117–118. In one way or another the first two allude to Model Penal Code § 210.6. *Ehrhardt,* at 5, n. 16 and accompanying text; *Comment,* at 417, n. 65. The third also notes what it perceives as similar views expressed by Justice Douglas.

6. "The discretion of the trial judge in determining what might be relevant to the sentence is not unbridled. It is merely a necessary power to avoid a needlessly drawn out procedure where one party might choose to go forward with evidence which bears no rele-

vance to the issues being considered. It is easily determined from the broadness of the statute that a narrow interpretation of the rules of evidence is not to be enforced, whether in regard to evidence or to any other matter except illegally seized evidence."
*State v. Dixon,* supra, at 7.

One reason the discretion of the court is "not unbridled" is that the *aggravating* circumstances "shall be limited" to those enumerated, although "[t]here is no limiting language introducing the list of statutory *mitigating* factors." *Proffitt v. Florida,* supra, 428 U.S. at 250, n. 8, 96 S.Ct. at 2966, n. 8, 49 L.Ed.2d at 922, n. 8; see Appendix 2. In this connection note also the Florida statute omits certain specific matters included in model § 210.6(2), *viz:* "the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition." Compare Appendix 1 and Appendix 2.

cess of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied in light of the totality of the circumstances present." *Id.*, at 10; *Proffitt v. Florida*, supra, 428 U.S. at 248–251, 257–258, 96 S.Ct., at 2965–2966, 2969, 49 L.Ed.2d at 921–922, 926.

Thus the Florida statute, similar to the Model Penal Code § 210.6(2), casts the jury in an advisory role. Compare Appendix 1 and Appendix 2. The legislative history demonstrates that § 921.141 is a "hybrid" product of compromise between legislative chambers, *viz:*

> "... [I]n return for the House's approval of a judge and jury sentencing procedure, the Senate abandoned its insistence that the jury have a determinative role in sentencing in capital cases. While the statute retains the Senate's philosophy that the jury should participate in the sentencing process, *the jury now has the authority only to give an advisory sentence which can then be rejected by the trial judge if his findings regarding mitigating and aggravating circumstances justify such action."*

Ehrhardt & Levinson, *The Aftermath of Furman: The Florida Experience*, 64 J.Crim.L. & C. (1973), Part II, at 15.[7] In short, whatever evidence is "presented [to the jury] as to any matter the court deems relevant to sentence" that is not related to any of the circumstances listed in subsection (6) or (7) becomes superfluous and is redundant when the court engages in the final decision making process.

### 4

In Texas, like it began in Florida, the initial response to *Furman v. Georgia* came in the form of H.B. No. 200, mandating capital punishment for murder committed under three specific circumstances. It was muted, however, in the Senate by a complete committee substitute, the procedural aspects of which were "virtually identical" to the Florida provisions in § 921.141. *Rumbaugh v. State*, 589 S.W.2d 414, at 416 (Tex.Cr.App.1979).[8] Each bill was sent to a joint conference committee which reconciled differences by substantially discarding underlying concepts of both, while modifying procedural aspects of the Senate substitute. Acts 1973, 63rd Leg., Ch. 426, Article 3, § 1, p. 1122, at 1125 (adding Article 37.071).[9]

---

**7.** "... The jury's function is advisory only, and their recommendation does not bind the judge. The statutory list of aggravating and mitigating circumstances must be considered in the sentencing procedure and if the judge imposes the death penalty he must support his decision by findings concerning these circumstances.

The statutory lists of aggravating and mitigating circumstances are intended to narrow the scope of discretion in making the life-death decision."

*Id.,* at 17.

**8.** Thus, as in Florida, the competing measures represented a basic difference in criminological philosophy: the House bill was "crime-oriented" with a mandatory death penalty, whereas the Senate substitute was "punishment-oriented" with a bifurcated sentencing procedure. See *Ehrhardt,* et al., supra, at 14.

**9.** It has been ventured that certain features of the Senate substitute reflect the influence of the Model Penal Code, § 210.6, supra, Comment, House Bill 200: *The Legislative Attempt to Reinstate Capital Punishment in Texas,* 11 Hous. L.Rev. 410 (1974), at 417, n. 65. Better to say, as the Court has discerned, that the Senate sub-

stitute was basically drafted on the Florida pattern which, in turn, is a modified § 210.6. *Rumbaugh v. State,* 589 S.W.2d 414, at 416, nn. 4 and 5. See *State v. Dixon,* 283 So.2d 1, at 4–6 (Fla.1973), a case noticed favorably by the Court in *Jurek v. State,* 522 S.W.2d 934, at 940 (Tex.Cr. App.1975).

As pertinent here, the Senate substitute provided:

"(a) Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted in the trial court before the trial jury[, *unless waived,*] as soon as practicable. [*If the trial jury has been waived or the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury empaneled for that purpose unless waived by the defendant.*] In the proceeding, evidence may be presented as to any matter that the Court deems relevant to sentence[, *and shall include matters relating to any to any of the aggravating or mitigating circumstances enumerated in Subsections (e) and (f) of this section. Any evidence that the court*

Immediately noticed is a significant departure from the superior role of a trial judge actually making the ultimate sentencing decision through a one-sided burdened process of receiving and weighing evidence relevant to prescribed aggravating and mitigating circumstances of the offense and of the offender in the light of judicial experience.[10]

The conference committee opted to retain "a separate sentencing proceeding" before the trial jury; but it extracted a mere snippet of language from its original definitive context, a phrase declaring that "evidence may be presented as to any matter that the court deems relevant to sentence," as it went about fashioning a strikingly differ-

ent process whereby the State now clearly has the burden to produce evidence relevant to three special issues sufficient to convince a jury beyond a reasonable doubt to return a unanimous special verdict giving an affirmative answer on each submitted issue, upon which the court "*shall* sentence the defendant to death." Article 37.-071(a)-(e); see *Comment,* House Bill 200, supra, at 419, nn. 81 and 82;[11]

In light of that comparative view, that the Florida statute and the Texas Senate committee substitute to H.B. 200 provided "evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to

---

deems to have probative value may be admitted, regardless of its admissibility under the exclusionary rules of evidence, but the defendant shall be accorded a fair opportunity to rebut any hearsay statements ]. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas. The prosecuting attorney and the defendant or his counsel shall be permitted to present argument for or against sentence of death."
*Rumbaugh,* supra, at 416 [material underscored within brackets deleted by conference committee, *id.,* at 417; cf. § 37.071(a)].

The conference committee removed references to waiver of a jury trial because it believed that practice to be constitutionally unsound, see, e.g., *Sorola v. State,* 769 S.W.2d 920 (Tex.Cr.App. 1989) (concurring opinion, at 929–937); it deleted mention of matters relating to enumerated aggravating and mitigating circumstances because it "substantially rejected that concept," *Rumbaugh v. State,* supra, at 417; it struck out authority of the trial court to admit any evidence deemed to have probative value, regardless of prohibitive "exclusionary rules of evidence," in favor of retaining that limitation, *ibid.*

Thus, each of the five sentences comprising the remaining paragraph that is now Article 37.071(a) came directly from the Florida statute—but utterly stripped its core conceptual context emphasizing consideration of and weighing aggravating and mitigating circumstances, first by an advisory jury and finally by the sentencing judge. See *State v. Dixon,* supra, at 4–6, 7–8, 10.

Finally, because as well as other imported language the bobbed phrase is "awkward wording" likely to mislead the bench and bar in Texas, early on Presiding Judge Onion pointed out that the terms "sentence" and "sentencing" in Article 37.071 should be taken as "equivalent to punishment." *Hovila v. State,* 532 S.W.2d 293 (Tex.Cr.App.1976) (concurring opinion, at

297). Later the Court elaborated on "a separate sentencing proceeding," *viz:* "Actually, the proceedings are the penalty or punishment stage of a capital murder trial, the formal sentencing comes later." *Livingston v. State,* 542 S.W.2d 655, at 661 n. 4 (Tex.Cr.App.1976).

**10.** The Florida Supreme Court justified trial judge rather than jury making the sentencing decision, *viz:*

"The third step added to the process of prosecution for capital crimes is that the trial judge actually determines the sentence to be imposed—guided by, but not bound by, the findings of the jury. To a layman, no capital crime might appear to be less than heinous, but a trial judge with experience in the facts of criminality possesses the requisite knowledge to balance the facts of the case against the standard criminal activity which can only be developed by involvement with the trials of numerous defendants. Thus the inflamed emotions of jurors can no longer sentence a man to die; the sentence is viewed in the light of judicial experience."
*State v. Dixon,* supra, at 8.

**11.** *Comment* hailed the conference committee for "eradicat[ing] the obviously vague criteria that would have loosely guided and impermissibly restricted the jury's power to assess punishment." The Supreme Court, of course, found otherwise in upholding the Florida system. *Proffitt v. Florida,* supra, 428 U.S. at 251–253, 96 S.Ct., at 2966, 49 L.Ed.2d, at 922–923. See also *Arizona v. Rumsey,* 467 U.S. 203, at 209–212, 104 S.Ct. 2305, at 2309–2310, 81 L.Ed.2d 164, at 181–182 (1984); *Bullington v. Missouri,* 451 U.S. 430, at 433–444, 101 S.Ct. 1852, at 1860, 68 L.Ed.2d 270, at 282 (1981); *Padgett v. State,* 717 S.W.2d 55, at 57 (Tex.Cr.App.1986); *Ex parte Mathes,* 830 S.W.2d 596 (Tex.Cr.App.1992) (resolution of special issues in bifurcated proceeding determinative of judgment and sentence of trial court).

any of the aggravating or mitigating circumstances enumerated [in designated subsections]," while the conference committee simply provided "evidence may be presented as to any matter that the court deems relevant to sentencing," reflects only that the respective legislatures compromised disparate proposed solutions to constitutional deficiencies in "standards" seen by certain Justices of the Supreme Court in extant death penalty schemes. Each process serves to circumscribe the discretion of the court to receiving evidence relevant to those matters of consequence in the respective ultimate determinations to be made, i.e. the weighing process in Florida, and the special issue process in Texas.

In the latter, however, the phrase has no special significance; the authority it purports to grant already exists: "It is thus axiomatic that the court should receive evidence that will lead to resolution of those critical [read "material"] facts and reject evidence that will not." Blakely, *Article IV: Relevancy and Its Limits.* 20 Houston L.Rev 151–152, 153–155 (1983 Tex. R.Evid. Handbook). Those "matters" are prescribed by article 37.071(b).[12]

In the seminal *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975), affirmed 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Court did not even mention the phrase in discussing abstractly certain matters deemed proper for consideration by the jury in a capital case, including "prior criminal conduct," *viz:*

> "... In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his *prior criminal conduct.*"

*Id.,* at 939–940. Whether the late Judge Morrison actually contemplated the underscored term to include unadjudicated offenses is a moot point in light of decisions such as *Hammett v. State,* 578 S.W.2d 699 (Tex.Cr.App.1979). Obviously impressed that in affirming *Jurek v. State,* supra, the Supreme Court declared, *inter alia,* "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine," the Court elaborated, *viz:*

> "Nothing in Art. 37.071, supra, requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase of the trial. Evidence of other crimes ... falls within the range of *'prior criminal conduct.'* Such 'prior criminal conduct' is clearly relevant to the jury's deliberation on the special issues submitted to it at the punishment phase of a capital murder trial."

*Id.,* at 709. *Accord: Garcia v. State,* 581 S.W.2d 168, at 178–179 (Tex.Cr.App.1979); *Wilder v. State,* 583 S.W.2d 349, at 369 (Tex.Cr.App.1979); *Green v. State,* 587 S.W.2d 167, at 169 (Tex.Cr.App.1979); *Rumbaugh v. State,* supra, at 418. And since then "relevant information" includes evidence in mitigation of the death penalty. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

### 5

Since 1965, in various versions Article 37.07, V.A.C.C.P., has provided that for purposes of assessing punishment "evidence may be offered by the State and the defendant as to the prior criminal record of the defendant, his general reputation and his character." For historical developments behind that formulation, see *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App. 1988–1989) (Onion, P.J., concurring and dis-

---

**12.** The Court determined early and late that the phrase allowed trial courts much discretion in admitting or excluding evidence germane to one or another special issue, usually the second special issue, e.g., *Livingston v. State,* 542 S.W.2d 655, at 661–662 (Tex.Cr.App.1976); *Gholson v. State,* 542 S.W.2d 395, at 398 (Tex.Cr.App.1976). However, not only constitutionally mandated and statutorily provided exclusionary rules of evidence but also ordinary rules regulating admissibility and manner of proof survived and were still "alive and well" under Article 37.-071(a). E.g., *Porter v. State,* 578 S.W.2d 742, at 748 (Tex.Cr.App.1979); *Rumbaugh v. State,* supra, at 417; *King v. State,* 657 S.W.2d 109, at 111 (Tex.Cr.App.1983); *De Luna v. State,* 711 S.W.2d 44, at 47 (Tex.Cr.App.1986). Thus there is no discretion to admit what rules of evidence declare inadmissible. See Tex.R.Cr.Evid.Rule 403.

senting, at 54) (opinion on rehearing, at 58–61); *Hedicke v. State*, 779 S.W.2d 837, at 840–841 (Tex.Cr.App.1989); see also Historical Note to Article 37.07. Construing the initial provision in the 1965 version, however, the Court opined:

> "Evidence to be offered at the hearing on punishment pursuant to Article 37.07, Section 2(b) ... is by no means limited to the defendant's prior record, his general reputation and his character. *Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible.*"

*Allaben v. State*, 418 S.W.2d 517, at 519 (Tex.Cr.App.1967) (on trial for committing sodomy, testimony of defendant himself that he had since been under care of psychiatrist for sexual problems should have been admitted but not reversible error).[13] Even though the excluded testimony was in the nature of mitigating evidence rather than revealing an extraneous offense, unless under its dicta one was somehow deemed relevant to probation, the Court consistently upheld the rule that unadjudicated extraneous offenses were inadmissible in assessing punishment. *Murphy v. State*, 777 S.W.2d 44, at 46–47 (Tex.Cr.App. 1988) (*Allaben* undermined in 1967 when "prior criminal record" defined to include, e.g., "a final conviction in a court of record"); see also *Id.*, at 61–64 (opinion on rehearing).

In 1985 the Legislature vested in this Court "full rulemaking power" to adopt and promulgate rules of evidence in trials of criminal cases (with an exception not applicable here) to remain in effect until "disapproved" by the Legislature, Acts 1985, 69th Leg., Ch. 685, p. 5136, §§ 5–9, and therein amended § 3(a) of Article 37.07 by inserting "as permitted by the Rules of

13. In the "alternate procedure" originally devised for jury trial in noncapital felony cases, the trial judge was to "assess the punishment applicable to the offense charged ... except when the defendant, upon the return of a finding of guilty, requests that the punishment be assessed by the same jury." Former article 37.-07, § 2(b). Regardless, however, "evidence may be offered by the State and the defendant as to the prior criminal record of the defendant, his general reputation and his character," and if the jury is to assess punishment, the court "shall give such additional instructions as may be necessary." *Id.*, § 2(c). See generally *Rojas v. State*, 404 S.W.2d 30 (Tex.Cr.App.1966).

As well as those specifically prescribed matters, the special revision committee anticipated either party might offer "such competent evidence as is helpful in assessing suitable punishment." Erisman, *Introduction to 1965 Revision Texas Code of Criminal Procedure*, 1 V.A.C.C.P. xv, at xxiv. It was not be, however. See *Hedicke v. State*, supra, at 841 (State Bar proposal rejected). Therefore, this first punishment scheme conditionally permitting a bifurcated trial made no mention of relevant considerations in determining the issue of probation beyond those specified. Such matters were separately treated in the revised Adult Probation Law, *viz:* in the event the jury first assesses punishment not to exceed ten years it may recommend probation upon a proper pretrial motion, proof and its finding that defendant had never been convicted of a felony. Acts 1965, 59th Leg., vol. 2, Ch. 722, p. 317, at 490, § 3a. There is no indication in any legislative history that either former article 37.07, § 2(b), or former article 42.12, § 3a, or both working together, contemplated the likelihood of and authorized consideration of other unidentified evidence going directly to the question of probation. See cases and historical note cited in main text above, and commentaries and germane parts of historical note following Article 42.12.

Therefore, the *Allaben* court must have been taking "judicial license" in opining that "evidence that is relevant to the application for probation, if any, is *also* admissible;" yet the Court continued to exercise its "license" to approve as appropriate for consideration many other "circumstances of the offender," such as family background, religious affiliation, education, employment history and the like, albeit precluding others deemed irrelevant in mitigation. See cases cited in *Murphy v. State*, supra, at 63–64 (opinion on rehearing).

With the 1967 revision the Legislature required a punishment hearing before the jury, *inter alia*, "where the jury may recommend probation and the defendant filed his sworn motion for probation before the trial began." Acts 1967, 60th Leg. Ch. 659, p. 1739, § 22. Also, and perhaps in light of problems noticed in *Rojas v. State*, supra, and in *Murphy v. State*, supra, at 54, it made other modifications and defined the term "prior criminal record" as it is today. *Id.*, at 1740. Still, the Legislature did not introduce any new matters for the jury to consider in assessing punishment or recommending probation, and those previously specified stood alone until 1985, 1987 and in 1989. See *post.* Indeed, § 3(e) has always cautioned that nothing therein "shall be construed [to affect] admissibility of extraneous offenses on ... guilt[.]"

Evidence" to become effective when the Court promulgated a body of rules of evidence, *id.*, § 8(b); we timely accomplished the task and ordered the Rules of Criminal Evidence thus formulated to become effective September 1, 1986.

Accordingly, the affected part of § 3(a) then provided:

"... evidence may, *as permitted by the Rules of Evidence,* be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character."

The manifest intent, as well as effect, of that amendment is to condition admission of evidence as to matters prescribed under § 3(a), on germane Rules of Criminal Evidence. One such rule provides:

"In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, Code of Criminal Procedure."

Rule 404(c).[14] The relationship between § 3(a) and Rules 404(c) and 405(a) thus stood until 1989—with one unrelated exception demonstrating that the Legislature well knows how to "disapprove" a rule of evidence this Court promulgated.[15]

Then, in § 4.04 of a lengthy comprehensive bill designed to reform the executive component of the criminal justice system and establish the Texas Department of Criminal Justice, the Legislature tucked the phrase away in an amendment to § 3(a). Acts 1989, 71st Leg., Ch. 785, p. 3471, Article 4, § 4.04, at 3492.[16]

The act originated and passed the House of Representatives as House Bill No. 2335. After it reached the Senate there were some intriguing machinations surrounding the bill.[17] The chairman of the Committee

---

**14.** A "prior criminal record" is evidence *per se* of a "bad" trait of character for "being a peaceful and law abiding citizen." See generally *Smith v. State,* 414 S.W.2d 659 (Tex.Cr.App. 1967). So much for the first sentence of Rule 404(c).

The second sentence is designed to permit introduction of any "other evidence" of general character and of specific traits of character of an accused. See definitions collected in *Boyd v. State,* 811 S.W.2d 105 (Tex.Cr.App.1991) (Clinton, J., dissenting at 126, n. 3); see also cases cited in Ray, Texas Law of Evidence (3rd Ed.) § 1492, 2 Texas Practice 169, at 171–172, n. 17. Of course, "other evidence" is limited to methods of proof in Rule 405(a), and specific conduct has never been and is not an available one. *Hedicke v. State,* 779 S.W.2d 837, at 840–841 (Tex.Cr.App.1989); *Hernandez v. State,* 800 S.W.2d 523 (Tex.Cr.App.1990).

Since there are restrictions on admitting these kinds of character evidence, the last sentence makes clear that nothing in Rule 404 limits provisions of Article 37.071, by which evidence of extraneous offenses and other unadjudicated misconduct may be admissible. This caveat reflects the understanding of the Court that evidence of specific conduct *qua* character is not admissible in noncapital cases. See Goode, Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal* § 404.7, 33 Texas Practice (1988) 136.

**15.** Tex.R.Cr.Evid. 609(d) precludes admission of "evidence of juvenile adjudications." However, Acts 1987, 70th Leg., Ch. 386, p. 1899, § 1, amended § 3(a) by adding at the end, in pertinent part, *viz:*

"Additionally, notwithstanding Rule 609(d), Texas Rules of Criminal Evidence, evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of felony, unless...."

**16.** Also inserted after the definition of "prior criminal record" is a new sentence identifying a mitigating circumstance, *viz:*

"A court may consider as a factor in mitigating punishment the conduct of a defendant while participating in a program under Article 17.40 or 17.42(a) of this code as a condition of release on bail."

While not directly implicated here, we quickly notice the prescription for "mitigating punishment" is reminiscent of language used by former Presiding Judge Onion in *Allaben v. State,* supra, at 519. See *ante,* at 533–534.

Acts 1990, 71st Leg. 6th C.S., Ch. 25, p. 135, § 30, also added subsection (f), allowing evidence of "availability of community corrections facilities" in the venue.

**17.** Before the Dallas Court of Appeals the State referred the court to a recording of an April 20, 1989, hearing by the Senate Committee of Criminal Justice on Senate Bill 1169, during which certain witnesses expressed respective favorable positions on one aspect of that bill. State's Brief, at 38–39. Writing for the court former Presiding Judge Onion reviewed the bill and the testimony and, noting its apparent demise, concluded, "The scant testimony.... lends little support to what the legislature had in mind and finally enacted." *Grunsfeld,* supra, at 167, n. 6.

on Criminal Justice produced a complete committee substitute (C.S.H.B. No. 2335) containing a § 4.03 that inserted the phrase at issue, repealed by omission the "record," "reputation" and "character" provisions and introduced an evidentiary disclaimer, so that as formally drafted those additions and deletions in operative parts appeared thus:

> "[E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to <u>any matter the court deems relevant to sentencing. This subsection may not be construed as authorizing the introduction of evidence seized in violation of the United States Constitution or the Texas Constitution</u> [the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior trial, or any final conviction material to the offense charged]."

The substitute was reported favorably May 17, 1989.[18] But on May 19 when he called it up for second reading the chairman offered *another* complete substitute, Floor Amendment No. 1., § 4.04 of which restored the evidentiary matters omitted in former § 4.03, deleted the evidentiary disclaimer and also added the "mitigating factor" quoted in note 16, *ante.* Senate Journal, 71st Leg. Regular Session, 1535 at 1551; see *Grunsfeld,* supra, at 167.

Moreover, the State does not mention the fact that on May 16, 1989, at least one of those witnesses testified to the same effect before the same committee when it was considering House Bill 2335. See Comment, *Bringing Light to the Non–Capital Felony Punishment Phase: Article 37.07, Section 3a and Evidence of Unadjudicated Extraneous Offenses,* 44 Baylor L.Rev. 101 (1992), at 115–116, n. 94 and related text. Unlike the *Comment* writer, however, and much like Presiding Judge Onion, I believe that in a hearing on a comprehensive substitute seventy four pages in length, containing eight articles, each with many sections, before six members of a committee, whatever interpretations of one proposed amendment coming from a partisan advocate for his own interest group do not necessarily lend support to that which a majority of

6

It is a truism in statutory construction that meaning of "same language" used to express a notion in one context does not necessarily carry forward to a different setting. The sense in which a phrase is used in one act is not conclusive in its significance when used in another; the spirit, purpose and scope of the particular phrase must be examined to determine its meaning. See 67 Tex.Jur.3d Statutes § 108 (1989), at 686. Such an examination has been conducted *ante,* and the results are indicative of different meanings in the respective conceptual and practical contexts.

In the Model Penal Code, the phrase is permissively coupled with examples of matters deemed "relevant to sentence," e.g., "the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating and mitigating circumstances enumerated in [designated subsections of § 210.6]." In the Florida statute, it is permissively related to mandatory matters limited in aggravation and unlimited in mitigation declared "relevant to sentence" in § 921.141(1), (6) and (7). The erstwhile Texas Senate substitute tracks the Florida statute. While the model penal code does not assign burdens of proof, judicial gloss on the Florida statute, and thus the Senate substitute, dictates that any aggravated circumstance related to the substantive offense must necessarily be proved beyond a reasonable doubt. In each formulation the trial judge finally

legislators in both bodies had in mind when finally approving a different version of the amendment in a revised substitute.

**18.** Conventional wisdom holds that the phrase in question was lifted from § 37.071(a), but compare model penal code, Florida statute and Senate committee substitute. It is evident from format and content of this proposed revision that senators were given to understand that under Texas Rules of Criminal Evidence promulgated by this Court both State and defendant may proffer and trial court could admit evidence going to "any matter deemed relevant to sentencing"—unless seized in violation of either Constitution. As will be seen *post,* however, apparently enough senators and other interested parties were not satisfied with that formulation.

weighs the "circumstantial evidence" in making the ultimate decision as to imposing *sentence* of life or death.

A hybrid product of legislatively engrafted language in several sentences from the Senate substitute with an innovative creation of the conference committee, Article 37.071 allows evidence "as to any matter the court deems relevant to *sentence*." That "awkward wording" even had to be translated for the bench and bar to "punishment, see note 9, *ante*, that is, relevant to material matters bearing on one or more special issues which the State must prove and a unanimous jury must find beyond a reasonable doubt. *Id.*, (a), (b) and (c). Such statutes are required to be based on and each has passed muster on considerations of constitutional dimension demanded by the Eighth Amendment, including now permitting a "reasoned moral response" to mitigating evidence. *Proffitt v. Florida, Jurek v. State, and Penry v. Lynaugh,* all supra. Because the purpose is to provide a jury with "all possible relevant information about the individual defendant whose fate it must determine," *Jurek*, supra, evidence of, *inter alia*, extraneous offenses are admissible. *Hammett v. State,* supra. Unlike the Florida and initial Senate committee schemes in which the jury verdict is merely advisory, in Texas as a matter of law the jury determination of requisite issues and independent effect of mitigating evidence mandates the penalty or punishment the court must impose in its sentence. Article 37.071(e), supra.

In nearly every noncapital case, on the other hand, depending on the situation, either judge or jury may assess punishment. Article 37.07, §§ 2(a) and (b), 3(a); *ante*, at 529. The judge may order an investigative report contemplated by Article 42.12, § 9, V.A. C.C.P., to be considered by the court. Article 37.07, § 3(d). Although Article 37.-07, § 3(a), now allows evidence "as to any matter the court deems relevant to sentencing," including certain formerly prescribed matters and newly added matters such as "adjudication of delinquency," see note 15, *ante*, "factor in mitigating punishment," see note 16, *ante*, and "availability of community corrections facilities," *ibid.*, there is no burden of proof on the "issue" of punishment; [19] nothing in the article requires the judge to inform the court or the jury of any requisite issue it must determine or otherwise what it is obliged to do with such evidence. Indeed, § 3(d) merely provides that upon considering the investigative report and the evidence adduced at hearing, the judge shall announce the decision "as to the punishment to be assessed" by the court; whereas § 3(b) provides merely that "the jury has the responsibility of assessing the punishment," with "such additional instructions as may be necessary," and in common practice none touches on any "issue" or "obligation" conditioning its assessment of "punishment" in terms of years and fine, if any.[20]

The verdict of the jury is to be included in the judgment of the court, and the defendant shall be punished according to its verdict. Article 42.01, § 1, item 8. V.A.C.C.A.P. A sentence is that part of the judgment ordering the punishment be carried into execution in the manner prescribed by law. Article 42.02. But provisions in Article 37.07 related to "punishment" fail to identify all "matters relevant to sentencing," *viz:* particularly the matter of probation in that sentence is not im-

---

19. "Whenever a particular issue can be identified that is 'of consequence' at the punishment proceeding, questions of burden of proof immediately come to mind. [But aside from certain statutorily prescribed or based exceptions scattered throughout our statutes imposing a burden on one party or the other], no burden of proof has ever been assigned to the broad 'issue' of what punishment to assess. See *Wright v. State,* 468 S.W.2d 422, at 424–425 (Tex.Cr.App. 1971)." *Murphy v. State,* supra, at 62, n. 10.

20. See and compare general charge on punishment including, where applicable, probation: Texas Criminal Pattern Jury Charges (State Bar of Texas 1975) 83–88, §§ CPJC 12.42(a)–(c), and 12.42(d); McCormick & Blackwell, Texas Criminal Forms and Trial Manual §§ 81.05, 81.13, 8 Texas Practice (1985) 268–270, 283 and Supp. 1992; 3 Texas Annotated Penal Statutes (Branch's Third Ed.1974) Appendix at 388–390; McClung, Jury Charges for Texas Criminal Practice (Rev.Ed.1992) 229.

posed, and as to other matters in that before pronouncing sentence the judge must or may take into consideration many other relevant matters withheld from the jury, e.g., Article 42.12, § 9, Articles 42.01–42.03 and 42.07–42.08, V.A.C.C.P. That is to say, the jury will not necessarily decide all terms and conditions of whatever sentence the judge actually imposes.

### 7

Given the "unique nature of the death penalty for purposes of Eighth Amendment analysis," the Supreme Court has consistently cautioned courts that its decisions in capital cases are of "limited assistance" in determining lesser punishments. *Rummel v. Estelle,* 445 U.S. 263, at 273, 100 S.Ct. 1133, at 1138, 63 L.Ed.2d 382, at 390 (1980); see *Beck v. Alabama,* 447 U.S. 625, at 637, 100 S.Ct. 2382, at 2389, 65 L.Ed.2d 392, at 403 (1980) (significant constitutional difference between death penalty and lesser punishments); *Gardner v. Florida.* 430 U.S. 349, at 357–358, 97 S.Ct. 1197, at 1204, 51 L.Ed.2d 393, at 401 (1977) (death penalty different kind of punishment from any other imposed in this country). Upon consideration of all factors germane to the spirit, purpose and scope of the phrases appearing in Article 37.071(a), and in Article 37.07, § 3(a), respectively, the only rational conclusion is that the "same language" theory will not determine the sense in which the phrase was meant to be used and applied in the latter, and I would so hold.[21] Accordingly, to the extent that the decision of the Beaumont Court in *Huggins* rests on that theory, it should be disapproved; because the *ratio decidendi* of the decision from the Fort Worth Court in the instant *Hunter* cause is based solely on that theory, and the State urged us to rely on it, see *ante,*

at 527–528, I concur with the Court in reversing the judgment.

### B

In *Huggins,* the Beaumont Court did not expressly relate disposition to the fact that probation was implicated below, see note 1, *ante;* instead, its decision seems to concentrate on other considerations in generally assessing punishment.

### 1

The majority opinion first construes the operative part of § 3(a), reasoning that the phrase in question is "additional to and separate and independent of the 'prior criminal record of the defendant,'" and also "evidence deem[ed] relevant" is "independent and separate from evidence of the defendant's general reputation and his character;" because the definition of "relevant evidence" in Tex.R.Crim.Evid. Rule 401 focuses on that which tends "to make the existence of any fact that is of consequence to the determination of the action," evidence of extraneous unadjudicated offenses to which defendant objected is "of consequence" to that part of the determination involving "assessment of punishment." *Id.,* at 911.[22]

But *quaere:* Precisely what may be identified as the *"matter of consequence,"* the existence of which any evidence of specific conduct tends to make more probable, and thus relevant? That is the exact question members of this Court debated without settling unanimously in *Murphy.* See Part III B, *post.* But, the Beaumont Court did not even recognize this is the crucial question to be answered in its first basis for overruling point of error one in favor of the State. See *Huggins,* at 910–911; cf. *McMillian v. State,* supra, at n. 1 *ante.*

---

**21.** The Court also rejects the "same language" theory, albeit through its analysis of legislative history. Slip opinion, at 8. In tandem we thus make moot the premise underlying consequential considerations and conclusions in Comment, *Bringing Light to the Non–Capital Felony Punishment Phase: Article 37.07, Section 3a and Evidence of Unadjudicated Extraneous Offenses,* 44 Baylor L.Rev. 101 (1992), particularly Parts II and III, at 109 ff.

**22.** In this respect, *Huggins* spawned several followings in which probation is *not* shown to be an issue, e.g., *Hunter v. State,* supra, at 920–921; *Hubbard v. State,* supra, at 319; *Gallardo v. State,* supra, at 541–543; *Rexford v. State,* supra, at 496–497; *Slott v. State,* supra, *passim* and at 227–228.

The majority opinion then addresses "an additional and separate distinct basis" for its decision, *viz:* the phrase "invokes the abuse of discretion test;" the trial judge did not abuse his discretion; "the solons overrule *Murphy v. State,* 777 S.W.2d 44 (Tex.Crim.App.1988)." *Id.,* at 911.[23]

Suffice to say that such summary resolutions of both bases begs difficult questions of statutory construction, legislative intent raised by the very actions of "the solons" and application of rules of evidence.[24]

2

In the instant *Grunsfeld* cause, writing for a majority of the Dallas Court, former Presiding Judge Onion took guidance from teachings in the Code Construction Act, *id.,* at 166; cautioned, "We *must therefore be careful not to lift out of context the new language in [the phrase] and construe it standing alone* or only with certain other selected provisions of the statutes to reach a desired result," *id.,* at 168; viewed legislative history of the 1989 amendment in light of that Act, *id.,* at 166–168; noted that since 1986, § 3(a) clearly shows "evidence deemed relevant" must be "that which is permitted by the Rules of Criminal Evidence," *id.,* at 168; proceeded to examine germane rules, i.e., Rules 401, 402, 403, 404(c) and 405, and found:

"Thus, if a prior criminal record is to be used, it must comport with the definition in the statute. If 'other evidence' is

**23.** The second basis for decision is reflected in *Hunter v. State,* 805 S.W.2d 918, at 920 (Tex. App.—Beaumont 1991) PDR granted (no probation); *Hubbard v. State,* 809 S.W.2d 316, at 319–320 (Tex.App.—Fort Worth 1991) PDR granted (no probation). In *Holland v. State,* 820 S.W.2d 221, at 223 (Tex.App.—Fort Worth 1992) PDR pending (probation), the appellate court agreed that the phrase "overrules *Murphy,*" at 67 (opinion on rehearing), quoting approvingly from Judge White's dissenting opinion at 53 and 51 (opinion on original submission).

**24.** For example, in her brief in the instant *Hunter* cause the appellate prosecutor calls attention to Tex.R.Cr.Evid. Rule 1101(d)(1), dealing with when prescribed rules of evidence are "applicable in part," *viz:*

"In the following proceedings these rules apply to the extent matters of evidence are not provided for *in the statutes which govern procedure therein* ....:
(1) Sentencing or punishment assessment by the court *or the jury;* * * * * *"
State's Brief on the Merits, at 13 (emphasis in original). From that provision the State argues:
".... As a result,.... § 3(a) effectively overrules any limitation placed on punishment evidence by the specific relevancy rules of Art. IV, substituting instead the single statutory standard of 'any matter the court deems relevant.' Thus, the requirement in.... § 3(a) that such evidence also be 'permitted by the Rules of Evidence' refers only to compliance with rules *outside* Art. IV, rules such as hearsay, best evidence, and so on."
*Ibid.* (emphasis in original). In my judgment, the argument is untenable.
Pursuant to legislative intent and design and responsive rule making by this Court, both § 3(a) and Rules of Criminal Evidence coalesced in 1985. The "procedure" in § 3 thus provided "matters of evidence" by incorporating

those "permitted by the Rules of Evidence." Rules of Criminal Evidence were to govern criminal proceedings "except where otherwise provided" in, e.g., Rule 1101(d)(1) and higher hierarchial governance, and then "inconsistency is to be removed by reasonable construction." *Id.,* Rule 101(b) and (c). Thus, as related to punishment, germane Article IV rules, especially Rules 404(c) and 405(a), govern those relevant matters § 3(a) identifies, i.e., "prior criminal record," "general reputation" and "character," subject to implied strictures of § 3(f) as to extraneous offenses.
Insofar as any other matter may be "relevant," the definition of "relevant evidence" in Rule 401 codified "current Texas law," and actually is a restatement of the common law. See *Blakely,* supra, at 528 and 533. Rule 402 applies that definition to general admissibility; Rule 403 lists factors to be balanced against probative value, a common law approach assimilated into Texas practice. Those rules of "general preference" are limited, however, by Rules 404 and 405. Goode, Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal* § 404.2, 33 Texas Practice (1988) 104. Rule 404(a) and (b) relate mainly to matters pertaining to trial on the merits, whereas Rule 404(c) governs character evidence relevant only to punishment in noncapital criminal cases. *Id.* § 404.7, at 135.
The phrase now inserted in § 3(a) does not provide anything new to traditional precepts and our practice—except the awkward word "sentencing," which must be judicially taken to mean "punishment." There is nothing in § 3(a) to indicate that so soon after inserting "permitted by the Rules of Evidence," the Legislature "overrules" anything or selectively nullified Article IV thereof. If there is any inconsistency between § 3(a) and Article IV rules applicable to punishment, "reasonable construction" is to remove it—which is what this whole exercise is about.

to be used to prove character, it is limited to proof by reputation and opinion witnesses."

*Id.,* at 169; concluded on this factor thus: "... The Rules of Criminal Evidence do not permit the introduction of extraneous, unadjudicated offenses and their details at the penalty stage of a non-capital case."

*Id.,* at 170.

Next, Judge Onion turned to § 3(a), another "limiting factor" in the definition of "prior criminal record," *id.,* at 170; noted the legislative evolution of the term, its tentative elimination and later restoration, indicating an intent to "retain the limitation of evidence [regarding that matter]," *id.,* at 171; discussed the significance of the term "including," *viz:*

"... We agree with the State that the 1989 amendment ... expanded without enumeration other matters that might be introduced if the trial court deems the same relevant to sentencing and other requirements are met. We disagree, however, with the contention that the amendment authorized the introduction of extraneous, unadjudicated offenses and their details in view of the retention of the term 'prior criminal record' and its limiting definition, the history of the statute and the 1989 amendment."

*Id.,* at 171. Accordingly, the *Grunsfeld* majority concluded:

"We hold that the testimony was inadmissible under both the Rules of Criminal Evidence and the definition limiting the meaning of 'prior criminal record.' The court abused its discretion in admitting it."

*Ibid.* Mentioning that Grunsfeld offered evidence only to establish his eligibility for probation after the State had adduced evidence of extraneous offenses, Judge Onion pointed out that his tactic "did not cure any error or call for a different result[:] *"Nothing in the 1989 amendment or its history indicate that the holding in Murphy* [opinion on rehearing, at 67] *was intended to be superceded." Ibid.*

Having implicitly disapproved some of its rationale, Judge Onion then directly and critically reviewed the *Huggins* effort at statutory construction, first noting it was made *sans* analysis and consideration of Rule 404(c), *id.,* at 171; and after examining its other followings, e.g., *Hunter v. State, Gallardo v. State* and *Hubbard v. State,* (all "no probation" cases), supra, rejected them, *viz:*

"We do not find these cases controlling or persuasive. It is abundantly clear that whatever the intent of the legislature was in enacting the 1989 amendment to article 37.07, section 3(a), it was not to open the door to evidence in noncapital cases as wide as that in capital case sentencing. If that was the intent, then the legislature would not have retained the limiting language of the amendment. * * * * Further we cannot attribute to the legislature an intent to reach an illogical result. It would not make sense that the legislature intended extraneous, unadjudicated offenses and their details be admissible, but that prior convictions must be final before being admissible and even then that details of the underlying offenses are to be excluded."

*Id.,* at 172. The dissenting opinion sought to give "a harmonious effect to all of the statute's language," agreeing however that, as amended, the phrase "does not go as far as article 37.071(a)," and in this regard, thus disagreed "with the decision in *Huggins v. State." Id.,* at. 175.

**3**

While vacillating between proving character through opinion or reputation, the common law of England and the common law of Texas was firm that evidence of specific conduct was "inherently prejudicial" and thus admissible "only when character was an issue." *Hedicke v. State,* 779 S.W.2d 837, at 840–841 (Tex.Cr.App.1989); Goode, Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal* § 405.1, 33 Texas Practice (1988) 138–139; see *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App. 1988–1999) (opinion on rehearing at 58–56). Because the *Huggins* court addressed § 3(a) coupled alone with Tex.R.Crim.Evid.

Rule 401—pretermitting, *inter alia*, exceptional provisions of Rule 402 (these rules); exclusionary provisions of Rule 403 (probative value versus danger of undue prejudice); special provisions of 404(c) (character relevant to punishment); limited method provisions of Rule 405(a) (reputation and opinion)—I concur with Judge Onion in his explicit and with this Court in its implicit disapproval of the first and second reasons basing the decision in *Huggins,* and by extension its followings identified *ante,* in note 2, but do not associate myself with every rationale employed and each conclusion reached by them.

## II

From this point onward in discussing the phrase, rather than its "awkward wording" I will translate it to read "any matter the court deems relevant to *punishment*" in keeping with our statutes, rules of evidence and practice, unless the context demands otherwise.[25] Considering the phrase in that light, on the authority of our opinion on rehearing in *Murphy* and its followings I would sign off right now to affirming the judgment of the court of appeals in *Grunsfeld.* However, prudence dictates that additional questions be examined.

## A

To recapitulate briefly, nearly very court of appeals that has addressed the issue has held that the 1989 amendment to Article 37.07, § 3(a) now authorizes admission of specific conduct evidence—with or without an application for probation. See cases collected by the majority in *Slott v. State,* 824 S.W.2d 225, at 226–227 (Tex.App.—

Beaumont 1992) (cf. dissenting opinion, at 228) PDR granted February 2, 1992. To the extent those opinions accepted the simplistic rationales of *Huggins,* et al., Judge Onion found they were neither controlling nor persuasive for a majority in *Grunsfeld.* Instead, he developed essentially two propositions to show why the phrase in question did not change the law with respect to admissibility of specific conduct evidence. *Accord: Blackwell v. State,* 818 S.W.2d 134, at 140–141 (Tex.App.—Waco 1991), PDR granted November 20, 1991 (analysis more persuasive because it harmonizes and gives effect to all provisions of the statute); *Torres v. State,* 818 S.W.2d 141, at 143 (Tex.App.—Waco 1991) vacated on other grounds, 825 S.W.2d 124 (Tex.Cr.App.1992).

### 1

First, because § 3(a) already provided that punishment evidence as to "prior criminal record," "general reputation" and "character," may be offered "as permitted by the Rules of Evidence," Judge Onion argues that even if specific conduct evidence meets the relevancy test of Rule 401 and clears hurdles of Rule 403, other rules must be considered; from views of commentators concerning Rule 404(c) Judge Onion asserts that a "prior criminal record" must comport with the statutory definition, and "other evidence of his character" under Rule 404(c) is "limited" to proof by reputation and opinion witnesses. *Grunsfeld,* at 168–169. We know that one matter the trial judge may deem relevant to punishment is character, because the statute expressly says so; evidence of character is also "permitted" by rules of evidence because Rule 404(c) says so. See note 14, *ante.* However, Rule 405(a) gen-

---

**25.** That there was and still is a collateral gambit involving specific conduct evidence seems to have been practically ignored in all the current argument over § 3(a) and germane rules of evidence. The late Judge Duncan called attention to it while concurring in *Murphy,* at 72–73.

Once an accused adduces evidence of "character" through testimony as to reputation or in the form of opinion, the witness may be crossexamined regarding "relevant specific instances of his conduct." Rule 405(a), as amended. The proper inquiry is, respectively, "have you heard" or "did you know." *Murphy,* at 73; see *Ward v.*

*State,* 591 S.W.2d 810 (Tex.Cr.App.1978–1979) (opinion on rehearing, at 818[4], [8] ). The prosecutor may "thereby indirectly develop the existence of prior acts of misconduct." *Murphy,* at 73. "This potentially *devastating technique of exposing the trier of fact to specific acts which reflect on the defendant's character* is permitted despite the general prohibition on the use of such evidence directly against the defendant." Goode, Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal* § 405.2, 33 Texas Practice (1988) 147.

erally limits *methods* of proving character to reputation and opinion testimony. Specific conduct evidence is admissible *qua* character evidence only where character is "an essential element of a charge, claim or defense," under Rule 405(b). Judge Onion held on authority of our opinion on rehearing in *Murphy* that character cannot fairly be described as an "element ... claim or defense" at the punishment phase of trial. *Id.,* at 170. Therefore, he reasons, specific conduct is an impermissible method of proving character under Rule 405(b), and hence under § 3(a) as well.

This first argument is acceptable as far as it goes. But it seems to me the argument may not go far enough. It is true that specific conduct is inadmissible *qua* character evidence. Moreover, in *Murphy* on rehearing we stated that, in the absence of express legislative guidance, we would not presume the Legislature intended to exclude specific conduct *qua* character evidence, "while at the same time contemplating identical evidence would always be admissible as 'relevant' to the broader [and, I might add, court-made] category, circumstances of the offender." "Loath to nullify the apparent legislative intent," we held that § 3(a) "precludes evidence of specific acts of conduct" to show "circumstances of the offender." *Id.,* at 64.

Six days before our opinion on rehearing in *Murphy,* however, the Legislature purportedly took the ultimate decision of what is "appropriate" for a jury to consider in assessing punishment out of the hands of this Court and placed it squarely in the hands of the trial court. The Legislature thus created a basis for a counter argument: What matter is "relevant" to punishment is whatever the trial judge "deems" it to be; should the trial court believe there is a "relevant" matter to which specific conduct evidence pertains—quite apart from any bearing it may have on character—defendant may not successfully invoke Rule 405(b) to exclude it; Rule 405(b) only controls *methods* of proving character; it is within the trial judge's discretion under

the phrase to deem specific conduct "relevant to punishment" regardless of its significance as character evidence; specific conduct evidence, if not "permitted by the Rules of Evidence," is at least arguably not prohibited by them. And, as will be developed *post,* in Part II B, the trial decision as to relevance may be unreviewable; unless the trial judge practically admits on the record that he is allowing specific conduct evidence *qua* character evidence, an appellate court would be hard put to reverse his decision.

2

As to the second proposition, Judge Onion maintains that, the Legislature's use of the word "including" notwithstanding, the definition of "prior criminal record" that was ultimately retained in § 3(a), even after the 1989 amendment, still operates to exclude specific conduct evidence. He admits (as he must, given use of the word "including") that the trial court's discretion in determining what matter is "relevant to punishment" is in fact not limited to "prior criminal record ... general reputation and ... character." *Id.,* at 171. But this Court had always considered unadjudicated misconduct under the rubric of prior criminal record, and when the 1967 definition of prior criminal record did not permit that form of proof, the Court construed that as a categorical prohibition against admission of specific conduct evidence. *Id.,* at 165, 166. Accordingly, Judge Onion argues that because the 1967 definition of prior criminal record was ultimately retained after the phrase, the Legislature must still have contemplated that specific conduct would not be admissible. *Id.,* at 171. He observes:

"It would not make sense that the legislature intended that extraneous, unadjudicated offenses and their details be admissible, but that prior convictions must be final before being admissible and even then that details of the underlying offenses are to be excluded." [26]

26. There are at least two potential problems with this observation. First, whether admission of details of unadjudicated extraneous offenses

even though the details of convicted offenses are not admissible makes "sense" is a question of legislative policy, not for the judiciary to

*Id.*, at 172. Thus Judge Onion concluded, reminiscent of his opinion on original submission in *Murphy*, that whatever else the trial judge might deem "relevant to punishment" under the statute, she could not admit evidence of specific conduct. *Id.*, at 171, 172.

Again, this argument does not satisfactorily account for the "authority" to decide what matter is "relevant to punishment." That specific conduct *qua* character evidence is inadmissible (albeit possibly inferable from fact of a final conviction or a probated or suspended sentence occurring prior to trial), does not mean that specific conduct evidence as to "any matter the court deems relevant to punishment," apart from its bearing on character, will be inadmissible. We may have trouble imagining how specific conduct evidence could be brought to bear on *any* matter relevant to the punishment decision apart from, or at least without involving, a character inference. Nevertheless, the Legislature has failed to provide a reference point for matters of "relevance" at the punishment phase, so it seems to me that after the 1989 amendment the fact that our intuitions as to what is appropriate to the punishment decision do not jibe with that of the trial court may not provide an adequate basis for appellate reversal.

### B

While questioning some of his particular analysis, I do ultimately agree with Judge Onion in one respect. We cannot give full play to the trial court's apparent "authority" under the phrase to determine what matters are relevant to punishment in noncapital prosecutions. To construe the amendment to confer such unfettered discretion in the trial court arguably is to say that the Legislature has unconstitutionally delegated a part of its authority in violation of the separation of powers doctrine embodied in Article II, § 1 of the Texas Constitution.

In a capital case a trial court determines whether "any matter is relevant to sentence" according to its pertinence to the special issues, as defined by the Legislature, or "mitigation" as required by Eighth Amendment principles. By assigning to the trial court the question of what matter is "relevant to punishment" in a noncapital case, where there are precious few statutorily defined issues, see *Murphy*, at 62–63, n. 10, the Legislature has essentially empowered trial courts to dictate case by case what the operative issues are at the punishment phase of trial. This may be an unconstitutional delegation of the legislative policy making function to the judicial branch.

Our Texas Supreme Court has long held that decisions of the United States Supreme Court on the doctrine of separation of powers are instructive in interpreting our own express constitutional provision. *Trimmier v. Carlton*, 116 Tex. 572, 296 S.W. 1070 (1927). The United States Supreme Court recently reiterated:

"that the nondelegation doctrine does not prevent Congress from seeking assistance, *within proper limits*, from its coordinate Branches. [Citation omitted] Thus, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. So long as Congress 'lay[s] down by legislative act *an intelligible principle to which the person or body authorized to [act] is directed to conform*, such legislative action is not a forbidden delegation of legislative power.' *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)."

*Touby v. United States*, 500 U.S. ——, at ——, 111 S.Ct. 1752, at 1756, 114 L.Ed.2d 219, at 227 (1991). Thus, the Legislature can delegate power to a coordinate branch, but not without first "declaring a policy and fixing a primary standard" for its im-

---

second guess absent a constitutional defect. At any rate, we cannot be at all sure the trial court could not admit details of convicted offenses too, should those details be found "relevant to punishment" under the 1989 amendment. Even

now the argument pressed upon the Court is that we have held in the capital context details of adjudicated crimes are admissible as they relate to future dangerousness.

plementation. *Ex parte Granviel,* 561 S.W.2d 503, at 514 (Tex.Cr.App.1978), citing *Margolin v. State,* 151 Tex.Cr.R. 132, 205 S.W.2d 775 (1947) and *Williams v. State,* 146 Tex.Cr.R. 430, 176 S.W.2d 177 (1943). That primary standard must be "capable of reasonable application." *Id.* "[A]n arbitrary, uncontrolled, and unreviewable discretion may not be delegated." 12 Tex.Jur.3d § 73, p. 601 (1981).

"The legislature has no right to confer on the judiciary a power in terms so broad and meanings so vague that the application or nonapplication of the law depends wholly on the individual opinion and predilections of the trial judge...."

*In re Johnson,* 554 S.W.2d 775, at 781–82 (Tex.Civ.App.—Corpus Christi 1977, ref'd n.r.e.), quoting with approval language from 16 C.J.S. Constitutional Law § 139, p. 635.

If in fact the phrase was intended to confer ultimate authority in trial courts to determine on a case by case basis the appropriate criteria for jury assessment of punishment, then it seems fairly clear that the Legislature has unconstitutionally delegated its authority. That the statute does not announce a policy has already been decried in *Murphy* itself on rehearing, at 62–63 (no clear guidance concerning considerations informing jury punishment decision). The phrase does nothing to remedy the situation. In fact, by purporting to vest authority in individual trial courts to make the "relevance" determination, the Legislature has potentially cut off whatever source of policy that had existed. We held in *Murphy* that, beyond the criteria in § 3(a), evidence could be admitted at the punishment phase as to the circumstances of the offense and the offender. The former was deemed "relevant" under the seemingly self-evident maxim that the punishment should fit the crime. The latter was considered "appropriate" if for no other reason than that, in the absence of express legislative policy, courts have traditionally believed that punishment should fit the particular criminal as well. Under § 3(a) if the trial judge decides "relevance," he is not even bound by this much policy—much less a "primary standard" by

which to implement it—in making his decision. His discretion will be "uncontrolled" and "unreviewable." Admissibility of evidence at the punishment phase will be left almost exclusively to the "individual opinion and predilections of the trial judge." Compare the "overarching constraints" Congress imposed on the United States Sentencing Commission in its mandate to establish uniform sentencing guidelines for the federal system. *Mistretta v. United States,* 488 U.S. 361, 374–378, 109 S.Ct. 647, at 655–657, 102 L.Ed.2d 714, at 732–734 (1989).

For this reason, overriding those given by Judge Onion in *Grunsfeld,* I would argue that we cannot give the phrase the broad impact its proponents claim it appears to have, in light of our opinion on rehearing in *Murphy.*

### III

Because we presume the Legislature would not do a useless thing, however, we must either construe the amendment to have accomplished some lesser objective, or else we must simply declare it unconstitutional as violative of separation of powers. The former is, of course, always to be preferred. *Ex parte Groves,* 571 S.W.2d 888, at 893 (Tex.Cr.App.1978); see Code Construction Act § 311.021, 3 V.T.C.A. Government Code (1988) 638.

### A

In ascertaining the intent of the Legislature when it enacted the 1989 amendment to Article 37.07, § 3(a), supra, it is useful to keep in mind the opinions on original submission in *Murphy v. State,* supra. A likely hypothesis is that when the Legislature added the language, *viz:* "any matter the court deems relevant to sentencing, including ...", it intended to reinstate the holding of *Allaben v. State,* supra, that punishment evidence was not limited to "prior criminal record ... general reputation and ... character," and that other evidence to mitigate punishment or inform a probation recommendation are admissible consistent with § 3(a), including evidence of specific

conduct. The *Murphy* opinions on original submission tend to support this hypothesis.

### 1

In his plurality opinion on original submission in *Murphy,* Judge Miller gave essentially two reasons that specific misconduct was not admissible at the punishment phase, defendant's application for probation notwithstanding. As I understand it, his first position was that the holding of *Allaben* was based on a construction of former § 2(b) as originally enacted in 1965. When the statute was amended in 1967, and § 2(b) became § 3(a) in which was included a precise definition of the term "prior criminal record" which did not include specific conduct, see Acts 1967, 60th Leg., ch. 659, p. 1739, § 22, eff. August 28, 1967, to the extent *Allaben* authorized specific conduct relevant to an application for probation to be admitted, it was no longer good law. Judge Miller's second position in *Murphy* assumed that "suitability" for probation is indeed a viable issue at the punishment phase where application for probation is made. Nevertheless he opined that the specific acts of misconduct admitted in *Murphy,* even if relevant to that issue, were more prejudicial than probative, and hence were also excludable under our traditional extraneous offense rule.

In dissent, Judge White disagreed that the revised § 3(a) in 1967 was meant to prohibit evidence of specific conduct at the punishment phase. Judge White did agree with Judge Miller's implicit assumption that application for probation makes an accused's "suitability" for probation an issue. Unlike Judge Miller, however, Judge White concluded that specific acts of misconduct are highly relevant to the issue of probation suitability. Most significantly for purposes of our inquiry here, Judge White opined that specific acts are relevant to probation suitability in much the same way they are relevant to the question of future dangerousness in the punishment phase of a capital murder prosecution, under Article 37.071(b)(2), supra, that is, as

indicative of probable future conduct. See *Murphy,* supra, at 52, n. 4 (White, J., dissenting). Moreover, Judge White vehemently disagreed that the particular evidence of unadjudicated bad conduct admitted in *Murphy* was more prejudicial than probative.

For his part, Presiding Judge Onion agreed that specific misconduct was inadmissible under § 3(a), but disagreed that the broader holding of *Allaben* was undermined. He pointed out that *Allaben* had not involved specific misconduct, and that its holding that other evidence relevant to application for probation was unaffected by the 1967 amendment. In essence he agreed with Judge White that § 3(a) did not provide an exhaustive list of what is admissible at the punishment phase, but agreed with Judge Miller to the extent he believed that the 1967 amendment to § 3(a) did render specific acts evidence *in* admissible.[27] Thus, Judge Onion concurred in the result, but disclaimed the plurality opinion of Judge Miller.

### 2

It has been suggested that the 1989 amendment to § 3(a) was the Legislature's response to this Court's plurality opinion on rehearing in *Murphy.* See *Grunsfeld v. State,* 813 S.W.2d 158, at 174 (Tex.App.— Dallas 1991) (Lagarde, J., concurring and dissenting). Also, it has been assumed that the Legislature reacted to our opinion in *Miller–El v. State,* 782 S.W.2d 892 (Tex. Cr.App.1990) (no coherent legislative policy to guide courts as to appropriate evidence for punishment deliberation). See *McMillian v. State,* 799 S.W.2d 311, 313 (Tex. App.—Houston [14th] 1990), PDR granted. Both were obviously searching for justification, but of course neither can possibly be so. House Bill 2335, which contained the amendment, was signed into law on *June 15, 1989.* See Acts 1989, 71st Leg., ch. 785, p. 3558. This Court's opinion on rehearing in *Murphy* was not handed down until six days later, on *June 21, 1989;* this Court's opinion in *Miller–El v. State,* supra, was

---

**27.** Indeed, given one or two definite caveats, it can fairly be said that Judge Onion's position

was adopted by a plurality of the Court in its opinion on rehearing in *Murphy.*

not delivered until seven months later, January 17, *1990.* It does seem more than just plausible, however, that the amendment was responsive to opinions on original submission in *Murphy,* handed down on April 8, *1988;* and that the approach the Legislature took was one suggested by Judge White.

**B**

The phrase chosen by the Legislature to amend § 3(a), may or may not have been taken in part from Model Penal Code § 210.6(2); Florida Statutes § 921.143; Senate Committee Substitute for H.B. 200; Conference Committee Report on H.B. 200; Senate Committee Substitute for H.B. 2335, § 4.03; Floor Amendment No. 1 to C.S.H.B. No. 2335, § 4.04; or the Conference Committee Report on H.B. 2335, see nn. 9–11 and accompanying text at 531–532, *ante,* or in whole from Article 37.071, (a), supra. Regardless, in that context we have long held evidence of specific conduct to be admissible as a matter relevant to the second special issue, future dangerousness. In noncapital cases, however, the Legislature and the Court have traditionally honored the general common law rule that evidence of specific conduct is not admissible to prove character unless that matter is an issue on the merits of the case, and never admissible to prove character as a material matter on punishment, except under dicta in *Allaben* when probation was at issue. *Murphy v. State,* supra, at 46–47 (Onion, P.J., concurring and dissenting on original submission, at 54–55) (opinion on rehearing, passim); see also 533–535, *ante.*

**1**

If the Legislature intended the 1989 amendment to defeat Judge Miller's view that the definition of "prior criminal record" in § 3(a) renders specific conduct evidence inadmissible even if relevant to suitability for probation, it could hardly have chosen more appropriate language than that suggested by Judge White's dissent in footnote 4. If "any matter the court deems relevant to sentence" is broad

enough to admit specific conduct to prove future dangerousness, so also it should be broad enough as well to authorize specific conduct to prove probation suitability, *vel non,* notwithstanding the narrow definition of "prior criminal record" which was ultimately left in the statute. In short, it may be that all the Legislature intended to accomplish by its 1989 amendment to § 3(a) was to make specific conduct evidence admissible whenever an application for probation is filed—in essence, to legislate Judge White's dissent—and nothing more.

**2**

Unfortunately, the Legislature did not anticipate our opinion on rehearing in *Murphy.* There the plurality held, contrary to the tacit assumption of Judge Miller, and the stated premise of Judge White, that "suitability" for probation is not in fact an issue at the punishment phase of trial. More importantly, the plurality pointed out that the concept of "relevancy" at the punishment phase is highly problematical. In this context the plurality wrote:

"... The problem lies in defining what the particular 'issues' are that evidence may or may not be 'relevant' to prove. We have remarked before that '[t]he material issue during the punishment phase is, obviously, what punishment to assess[.]' *Hoffert v. State,* 623 S.W.2d 141, 145 (Tex.Cr.App.1981). While that is indeed obvious, it is not especially helpful for purposes of deciding relevance.

"The facts 'of consequence' at the guilt phase of trial are narrowly drawn by or readily extrapolated from penal provisions and statutory justifications. An extraneous offense may be offered as proof of an ultimate fact, such as identity or culpable intent, or it may be offered to establish an evidentiary fact, such as motive, from which an ultimate fact may be inferred. In either case we know what the material issues are because the Legislature has supplied them. Thus we have a fixed point by which to navigate questions of relevance at the guilt phase of trial. The same is not true of the punishment phase. There, aside from certain exceptions, [footnote omitted] the

'factfinder' does not determine the existence of discreet [sic: discrete] facts. Deciding what punishment to assess is a normative process, not intrinsically fact bound. Because the material issue at punishment is so indistinct, relevancy of proffered evidence cannot be determined by deductive processes. To extend the nautical metaphor, we have been given a rudder to steer, but no polestar to steer by.

"In reality, what is 'relevant' to determining proper punishment is more a question of policy that of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately, outside of Article 37.07, § 3(a), supra, it has given no clear guidance as to what considerations should inform the jury's punishment decision."

777 S.W.2d at 62–63.

### 3

This recognition that lack of concrete issues at the punishment phase of a noncapital trial makes "relevance" a purely normative call has put a peculiar gloss on the phrase. By providing that evidence as to whatever "matter" the trial court deems relevant to punishment is admissible at that phase of trial the Legislature appears, in light of *Murphy* on rehearing, to have assigned to the trial judge the more significant task of deciding, apparently case by case, what "matters" are appropriate to inform the jury determination as to proper punishment within the prescribed range. Outside of "prior criminal record," "general reputation" and "character," however, the Legislature still has not supplied any particular reference, any "polestar" if you will, by which the trial court can make the essential "relevancy" determination. It is apparently left to the trial court in its

unfettered discretion to decide what "matter is relevant." Moreover, because the trial court is legislatively assigned the task of deciding criteria for "relevancy," its decision may be essentially unreviewable by an appellate court. After all, if the trial court's discretion includes saying what "matter is relevant," what "relevance" *is*, an appellate court can hardly say the trial court abused its discretion by finding a particular piece of evidence "relevant." [28]

### C

However, I cannot believe that the Legislature, which did not have our opinion on rehearing in *Murphy* before it, intended by adding the phrase to confer such unbridled, and hence unconstitutional discretion upon trial courts. See Part II B, *ante*. To avoid now denouncing the phrase as an unconstitutional breach of the separation of powers doctrine, and in favor of finding it advances a proper purpose, I would hold that the phrase does no more than give a trial court discretion to admit evidence having any tendency to prove those matters that are traditionally recognized categories of "circumstances of the offense and the offender," as well as any material matter already clearly delineated by the Legislature—neither embracing specific conduct evidence. This construction accomplishes a legislative objective to overrule Judge Miller's opinion on original submission in *Murphy* to the extent it suggests that the definition of "prior criminal conduct" is an exhaustive list of what is admissible at the punishment phase in noncapital cases. That this Court subsequently construed the pre-amendment statute to accomplish this same result on rehearing in *Murphy* just means the Legislature acted prematurely while this Court deliberated on a granted State's motion for rehearing—not that it did a "useless" thing.

---

28. The same is not true in the capital murder context. There we have special issues to illuminate matters of consequence. Not only can the trial court decide relevance according to whether evidence tends to make a matter of consequence more or less probable in determining elements of the issues, such as "deliberateness," "reasonable expectation," "criminal acts of vio-lence," "continuing threat," "unreasonable response" and "provocation," Tex.R.Cr.Evid., Rule 401, but also this Court, as the direct appellate court in capital cases, can measure the trial court's discretion for possible abuse, against that same standard. See generally *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App.1991) (Opinion on rehearing on Court's own motion).

But we also held on rehearing in *Murphy* that "suitability" for probation has not been identified by the Legislature to be a material issue at the punishment phase, *id.*, at 67, and certainly nothing in Article 42.-12, V.A.C.C.P., has been amended that would change that holding. Thus, on the ultimate issue in these causes, I would continue to hold that specific conduct does not become admissible at punishment simply because an application for probation has been filed and presented to the fact finder for the determination. *Kingsley v. State,* 784 S.W.2d 688 (Tex.Cr.App.1990); *Drew v. State,* 777 S.W.2d 74 (Tex.Cr.App. 1989).

After sorting out and considering all germane positions and propositions and for the reasons stated, compellingly to me but perhaps too extendedly for some, I join the judgment of the Court.[29]

MILLER, J., joins that part of this concurring opinion that does not conflict with his opinion on original submission in *Murphy v. State,* 777 S.W.2d 44 (Tex.Cr.App. 1988).

### APPENDIX I

(1) *Death Sentence Excluded.* When a defendant is found guilty of murder, the Court shall impose sentence for a felony of the first degree if it is satisfied that:

(a) none of the aggravating circumstances enumerated in Subsection (3) of this Section was established by the evidence at the trial or will be established if further proceedings are initiated under Subsection (2) of this Section; or

(b) substantial mitigating circumstances, established by the evidence at the trial, call for leniency; or

(c) the defendant, with the consent of the prosecuting attorney and the approval of the Court, pleaded guilty to murder as a felony of the first degree; or

(d) the defendant was under 18 years of age at the time of the commission of the crime; or

(e) the defendant's physical or mental condition calls for leniency; or

(f) although the evidence suffices to sustain the verdict, it does not foreclose all doubt respecting the defendant's guilt.

(2) *Determination by Court or by Court and Jury.* Unless the Court imposes sentence under Subsection (1) of this Section, it shall conduct a separate proceeding to determine whether the defendant should be sentenced for a felony of the first degree or sentenced to death. The proceeding shall be conducted before the Court alone if the defendant was convicted by a Court sitting without a jury or upon his plea of guilty or if the prosecuting attorney and the defendant waive a jury with respect to sentence. In other cases it shall be conducted before the Court sitting with the jury which determined the defendant's guilt or, if the Court for good cause shown discharges that jury, with a new jury empanelled for the purpose.

In the proceeding, evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in Subsections (3) and (4) of this Section. Any such evidence which the Court deems to have probative force may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair

---

**29.** As a collateral consequence, the opinion of the Court and this opinion implicitly disapprove several decisions of courts of appeals in which probation was at issue, *viz: Huggins v. State,* 795 S.W.2d 909 (Tex.App.—Beaumont 1990); *McMillian v. State,* 799 S.W.2d 311 (Tex.App.—Houston [14th] 1990); *Zayas v. State,* 814

S.W.2d 509 (Tex.App.—Houston [14th] 1991), and to the extent they relied on the "same language" theory, regardless of an application for probation, *viz: Huggins v. State,* supra; *Gallardo v. State,* 809 S.W.2d 540 (Tex.App.—San Antonio 1991); *Holland v. State,* 820 S.W.2d 221 (Tex.App.—Fort Worth 1991).

opportunity to rebut any hearsay statements. The prosecuting attorney and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

The determination whether sentence of death shall be imposed shall be in the discretion of the Court, except that when the proceeding is conducted before the Court sitting with a jury, the Court shall not impose sentence of death unless it submits to the jury the issue whether the defendant should be sentenced to death or to imprisonment and the jury returns a verdict that the sentence should be death. If the jury is unable to reach a unanimous verdict, the Court shall dismiss the jury and impose sentence for a felony of the first degree.

The Court, in exercising its discretion as to sentence, and the jury, in determining upon its verdict, shall take into account the aggravating and mitigating circumstances enumerated in Subsections (3) and (4) and any other facts that it deems relevant, but it shall not impose or recommend sentence of death unless it finds one of the aggravating circumstances enumerated in Subsection (3) and further finds that there are no mitigating circumstances sufficiently substantial to call for leniency. When the issue is submitted to the jury, the Court shall so instruct and also shall inform the jury of the nature of the sentence of imprisonment that may be imposed, including its implication with respect to possible release upon parole, if the jury verdict is against sentence of death.

Alternative formulation of Subsection (2):

(2) *Determination by Court.* Unless the Court imposes sentence under Subsection (1) of this Section, it shall conduct a separate proceeding to determine whether the defendant should be sentenced for a felony of the first degree or sentenced to death. In the proceeding, the Court, in accordance with Section 7.07, shall consider the report of the presentence investigation and, if a psychiatric examination has been ordered, the report of such examination. In addition, evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in Subsections (3) and (4) of this Section. Any such evidence which the Court deems to have probative force may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut any hearsay statements. The prosecuting attorney and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

The determination whether sentence of death shall be imposed shall be in the discretion of the Court. In exercising such discretion, the Court shall take into account the aggravating and mitigating circumstances enumerated in Subsections (3) and (4) and any other facts that it deems relevant but shall not impose sentence of death unless it finds one of the aggravating circumstances enumerated in Subsection (3) and further finds that there are no mitigating circumstances sufficiently substantial to call for leniency.

(3) *Aggravating Circumstances.*

(a) The murder was committed by a convict under sentence of imprisonment.

(b) The defendant was previously convicted of another murder or of a felony involving the use or threat of violence to the person.

(c) At the time the murder was committed the defendant also committed another murder.

(d) The defendant knowingly created a great risk of death to many persons.

(e) The murder was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual inter-

course by force or threat of force, arson, burglary or kidnapping.

(f) The murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from lawful custody.

(g) The murder was committed for pecuniary gain.

(h) The murder was especially heinous, atrocious or cruel, manifesting exceptional depravity.

(4) Mitigating Circumstances.

(a) The defendant has no significant history of prior criminal activity.

(b) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance.

(c) The victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

(d) The murder was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct.

(e) The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor.

(f) The defendant acted under duress or under the domination of another person.

(g) At the time of the murder, the capacity of the defendant to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication.

(h) The youth of the defendant at the time of the crime.

### APPENDIX II

### 283 So.2d 1

The statutes involved in the questions before this Court are Fla.Stat. §§ 775.082, 782.04, and 921.141, F.S.A.Fla.Stat. § 775.-082, F.S.A., deals with penalties for criminal convictions and provides, in pertinent part:

"(1) A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than twenty-five (25) calendar years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in section 921.141 results in findings by the court that such person shall be punished by death, and in the latter event such person shall be punished by death."

Fla.Stat. § 782.04, F.S.A., the statute under which all the accuseds before this Court are charged, deals with the crime of murder and provides:

"(1)(a) The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when *committed by a person engaged in the perpetration of* or in the attempt to perpetrate any arson, rape, robbery, burglary, kidnaping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, or which resulted from the unlawful distribution of heroin by a person over the age of seventeen (17) years when such drug is proven to be the proximate cause of the death of the user shall be murder in the first degree and shall constitute a capital felony, punishable as provided in § 775.082.

"(b) In all cases under this section the procedure set forth in section 921.141 shall be followed in order to determine sentence of death or life imprisonment.

"(2) When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual or when *committed in the perpetration of* or in the attempt to perpetrate any arson, rape, robbery, burglary, kidnaping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, except as provided in subsection (1), it shall be murder in the second degree and shall constitute a felony of the first degree, punishable by imprisonment

in the state prison for life, or for such term of years as may be determined by the court.

"(3) When perpetrated without any design to effect death, by a person engaged in the perpetration of or in the attempt to perpetrate any felony, other than arson, rape, robbery, burglary, kidnaping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb, it shall be murder in the third degree and shall constitute a felony of the second degree, punishable as provided in section 775.082, section 775.083, or section 775.084." (Emphasis supplied)

Fla.Stat. § 921.141, F.S.A., provides the procedure to be followed in determining what penalty should be assessed following a conviction for a crime designated as a capital felony. It provides:

"(1) Upon conviction or adjudication of guilt of a defendant of a capital felony the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment as authorized by section 775.082. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If the trial jury has been waived or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury empaneled for that purpose unless waived by the defendant. In the proceeding, *evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (6) and (7) of this section.* Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements; and further provided that this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Florida. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

"(2) After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court based upon the following matters:

"(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (6), and

"(b) Whether sufficient mitigating circumstances exist as enumerated in subsection (7), which outweigh aggravating circumstances found to exist, and

"(c) Based on these considerations whether the defendant should be sentenced to life or death.

"(3) Notwithstanding the recommendation of a majority of the jury, the court after weighing the aggravating and mitigating circumstances shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:

"(a) That sufficient aggravating circumstances exist as enumerated in subsection (6), and

"(b) That there are insufficient mitigating circumstances, as enumerated in subsection (7), to outweigh the aggravating circumstances. In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (6) and (7) and based upon the records of the trial and the sentencing proceedings.

"(4) If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment in accordance with section 775.082.

"(5) The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida within sixty (60) days after certification by the sentencing court of the entire record unless time is extended an

additional period not to exceed thirty (30) days by the Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases, and shall be heard in accordance with rules promulgated by the Supreme Court.

"(6) Aggravating circumstances.—Aggravating circumstances shall be limited to the following:

"(a) The capital felony was committed by a person under sentence of imprisonment;

"(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person;

"(c) The defendant knowingly created a great risk of death to many persons;

"(d) The capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit any robbery, rape, arson, burglary, kidnaping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive-device or bomb;

"(e) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;

"(f) The capital felony was committed for pecuniary gain;

"(g) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws;

"(h) The capital felony was especially heinous, atrocious or cruel.

"(7) Mitigating circumstances.—Mitigating circumstances shall be the following:

"(a) The defendant has no significant history of prior criminal activity;

"(b) The capital felony was committed while the defendant was under the influ-ence of extreme mental or emotional disturbance;

"(c) The victim was a participant in the defendant's conduct or consented to the act;

"(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor;

"(e) The defendant acted under extreme duress or under the substantial domination of another person;

"(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;

"(g) The age of the defendant at the time of the crime." (Emphasis supplied)

McCORMICK, Presiding Judge, dissenting.

"It is no part of the duty of the judiciary to resort to technical subtleties to defeat the obvious purposes of the legislative power in a matter over which that power has a constitutional right to control." [1]

Although this Court has on many occasions found the Legislature to have stepped beyond its bounds, today the majority fails to recognize the role of the judiciary and ignores Article 2, Section 1 of our Texas Constitution. The majority openly thwarts the will of the people as expressed by legislative enactment in order to substitute its own sense of justice. To such unwarranted and unconstitutional judicial activism, I vigorously dissent.

### I.

### THE ISSUE

The issue presented in these cases is whether Article 37.07, Section 3(a), of the Texas Code of Criminal Procedure forbids the introduction of unadjudicated extraneous offense evidence during the punishment stage of a trial for any offense other than capital murder.[2] This Section, as

---

**1.** *Cain v. The State,* 20 Tex. 355 (1857), citing Sedgwick on Statutory and Constitutional Law.

**2.** Much of this opinion is taken from Justice Lagarde's concurring and dissenting opinion in *Grunsfeld v. State,* 813 S.W.2d 158 (Tex.App.—Dallas 1991) (Lagarde, J., concurring in part and dissenting in part) (pet. granted).

amended in 1989, now provides, in pertinent part, as follows:

"Sec. 3.   Evidence of prior criminal record in all criminal cases after a finding of guilty.

"(a) Regardless of the plea and whether punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character.   The term prior criminal record means a final conviction in a court of record, or a probated or a suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." Article 37.07, Section 3(a), V.A.C.C.P. (emphasis added to reflect the amendatory language).

See Act of June 15, 1989, Chapter 785, Section 4.04, 1989 TEX.SESS.LAW SERV. 3492 (Vernon).

"When we interpret statutes such as [Article 37.07, Section 3(a) ], we seek to effectuate the 'collective' intent of the legislators who enacted the legislation." *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App. 1991), citing *Camacho v. State,* 765 S.W.2d 431 (Tex.Cr.App.1989).   As this Court explained in *Boykin:*

"When attempting to discern this collective legislative intent or purpose, we necessarily focus our intention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment.   We do this because the text of the statute is the law in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature.   We focus on the literal text also because the text is the only definitive evidence of what the legislators (and perhaps the Governor) had in mind when the statute was enacted into law.   There really is no other certain method for determining the collective legislative intent or purpose at some point in the past, even assuming a single intent or purpose was dominant at the time of enactment.   Yet a third reason for focussing on the literal text is that the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted." *Boykin,* 818 S.W.2d at 785 (emphasis omitted).

The *Boykin* Court concluded that "if the meaning of the statutory text, when read using the established canons of construction relating to such text should have been plain to the legislators who voted for it, we ordinarily give effect to that plain meaning." *Id.* at 785, citing *Smith v. State,* 789 S.W.2d 590, 592 (Tex.Cr.App.1990).   Thus, if the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the Judiciary to add or subtract from such a statute. *Boykin,* 818 S.W.2d at 785; *Coit v. State,* 808 S.W.2d 473, 475 (Tex.Cr.App. 1991); *Ex parte Davis,* 412 S.W.2d 46, 52 (Tex.Cr.App.1967).   On the other hand, if the plain language of a statute is not clear or would lead to absurd results, "then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extra-textual factors as executive or administrative interpretation of the statute or legislative history." *Boykin,* 818 S.W.2d at 785 (emphasis omitted). Therefore, we must first determine whether Article 37.07, Section 3(a), is clear and unambiguous on the issue of admission of unadjudicated extraneous offenses during the punishment phase of trial.

Several Texas appellate courts have explicitly held that Article 37.07, Section (3)(a), as amended, permits admission of unadjudicated extraneous offenses at the punishment phase of a noncapital trial. See *Rexford v. State,* 818 S.W.2d 494 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd, reh'g pending); *Gallardo v. State,* 809 S.W.2d 540 (Tex.App.—San Antonio 1991, pet. granted); *Hubbard v. State,* 809 S.W.2d 316 (Tex.App.—Fort Worth 1991, pet. granted); *McMillian v. State,* 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, pet. granted); *Huggins v. State,* 795 S.W.2d 909, 911 (Tex.App.—

Beaumont 1991, pet. ref'd). The Dallas Court of Appeals, however, has determined otherwise in *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991). Judge Onion, writing for eight of the fifteen justices of that court, determined that:

"At first blush, it seems that the additional language [in the amended Article 37.07, section (3)(a)] is broad and sweeping. Upon closer examination it appears that evidence of extraneous, unadjudicated offenses, even if deemed relevant to sentencing by the trial court, would have to meet two tests. First, it would have to be evidence permitted by the rules of evidence. Second, if it is part of a defendant's prior criminal record, as it has been considered in the past, it must comply with the statutory definition of that term."

See also *Blackwell v. State*, 818 S.W.2d 134 (Tex.App.—Waco 1991, pet. pending). Arguably, this conflict among the courts of appeals demonstrates that the amended statute is not clear and unambiguous; hence, we should now use the prescribed rules of statutory construction to examine Article 37.07, Section 3(a), and determine whether there is an articulate, sensible way to interpret it.

## II.

## CONSTRUCTION OF ARTICLE 37.07, SECTION 3(a)

### A. Presumptions

In construing a statutory amendment, courts must presume that the Legislature intended to change the law; courts should subsequently construe the amendment in a way that gives effect to the change rather than in a way that renders the amendment useless. *Ex parte Trahan*, 591 S.W.2d 837, 842 (Tex.Cr.App.1979). Courts then should presume that the Legislature intended that the effect of the change be

given to the entire statute. *Ex parte Austin*, 746 S.W.2d 226, 236 (Tex.Cr.App.1988); V.T.C.A., Government Code, Section 311.021(2). Finally, courts should presume the Legislature intended the change to effect a just and reasonable result that favors the public interest over any private interest. *Lindsay v. Papageorgiou*, 751 S.W.2d 544, 547 (Tex.App.—Houston [1st Dist.] 1988, writ denied); V.T.C.A., Government Code, Section 311.021(5).

### B. The Code Construction Act

To assist courts in construing statutes, the Legislature has provided a nonexclusive list of factors a court may consider. These are: (1) the object sought to be attained; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; (7) title (caption), preamble and emergency provisions. V.T.C.A., Government Code, Section 311.023 (The Code Construction Act). See *Dillehey v. State*, 815 S.W.2d 623 (Tex.Cr.App. 1991) (Judge Baird, dissenting at 629, when construing statutes courts should consider all factors enumerated by Government Code Section 311.023).

### (1) *The object sought to be attained.*

To ascertain the legislative intent—i.e., the object sought to be attained—we look to the language of the statute itself. *Faulk v. State*, 608 S.W.2d 625, 631 (Tex. Cr.App.1980). The Legislature amended Article 37.07, Section 3(a), by adding the phrase that evidence may be admitted "*as to any matter the court deems relevant to sentencing, including ....*"[3] The added phrase "as to any matter the court deems relevant" clearly expands the evidence admissible at the punishment phase. The ad-

---

**3.** Prior to its amendment, Article 37.07, Section 3(a), read as follows:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of

the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged...." Article 37.07, Section 3(a), V.A.C.C.P. (1988).

dition of the word "including" merely emphasizes the expansion because it is a term of enlargement or inclusion rather than a term of limitation or exclusion. V.T.C.A., Government Code, Section 311.005(13). That is, rather than evidence being limited to a defendant's prior criminal record, it now includes his prior criminal record as well as "evidence as to any matter the court deems relevant."

As stated above, this Court must presume that the Legislature intended to change the law when Article 37.07 was amended. Thus, we can easily conclude from the broad language added to the statute that the Legislature's objective in amending Article 37.07, Section 3(a), was to expand the scope of evidence to be admitted at the punishment phase of a noncapital trial. In fact, the only limits on the scope of admissibility apparent from the language of Article 37.07, section 3(a), are the Rules of Evidence and the determination of relevancy by the trial court.[4]

(2) *The circumstance under which the statute was amended.*

When interpreting the pre-amendment version of Article 37.07, Section 3(a), this Court held that extraneous offense evidence is not admissible at the punishment phase of a trial unless one of the parties opens the door to such evidence. *Murphy v. State*, 777 S.W.2d 44, 64 (Tex.Cr.App. 1989) (Plurality opinion on State's Motion for Rehearing). Such a narrow construction, however, had not always been the law. In a series of cases prior to *Murphy*, this Court held that:

"Evidence to be offered at the hearing on punishment pursuant to the provisions of Article 37.07, Section 2(b), Vernon's Ann. C.C.P. is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." *Allaben v. State*, 418 S.W.2d 517, 519 (Tex.Cr.App.1967).

*Murphy* overruled these cases *sub silentio.* In a plurality opinion on a motion for rehearing, Judge Clinton reasoned that although character evidence was admissible at the penalty phase, and the Rules of Evidence permit proof of character with specific acts of conduct, Section 3(a) authorized proof of a criminal record solely with final convictions, thereby evidencing a legislative intent to exclude proof of character with extraneous unadjudicated offenses. *Id.* at 61. Judge Duncan explained in a concurring opinion that "[i]f the Legislature wants the jury to have access beyond that authorized by Art. 37.07, § 3(a), supra, it should pass legislation to that effect. It is not this Court's function to authorize an expansion of the statute beyond its language." Id. at 71 n. 1 (Duncan, J., concurring).

We presume that the Legislature accomplished precisely this expansion when they amended the statute. See *Welch v. Welch*, 369 S.W.2d 434, 437 (Tex.Civ.App.—Dallas, 1963, no writ.) (presumption that Legislature knew the circumstances and conditions affecting or relating to the amendment, including prior court decisions). Thus aware that this Court gave Article 37.07, Section 3(a), a narrow interpretation because of its restrictive language, the Legislature obviously intended such not to be the case when they amended the statute by adding such expansive language.

(3) *The legislative history.*

The legislative history of the 1989 amendment to Article 37.07, Section 3(a), reveals that it was effected by House Bill 2335, a voluminous piece of legislation which, among other things, created the Texas Department of Criminal Justice. Representative Hightower first introduced House Bill 2335 in the House. The House approved the bill and sent it on to the

---

**4.** If we read Article 37.07 in its entirety, we find that Section 3(e) states that "[n]othing herein contained shall be construed as affecting the admissibility of extraneous offenses on the question of guilt or innocence." This section was not amended in 1989, but it clearly declares that Article 37.07 does not affect the admissibility of extraneous offenses at the guilt/innocence stage of trial.

Senate. There was no amendment to Article 37.07 in the proposed bill. The bill, however was reported unfavorably in the Senate by the Senate's Justice Committee. Senator McFarland then offered Committee Substitute to House Bill 2335 which included a section amending Article 37.07, Section 3(a), to read as follows:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state or the defendant as to any matter the court deems relevant to sentencing. This subsection may not be construed as authorizing introduction of evidence seized in violation of the United States Constitution or the Texas Constitution."

As initially proposed, therefore, the amendment to Article 37.07 was virtually as broad as Article 37.071(a), V.A.C.C.P., which places only constitutional limitations on the evidence admissible at the punishment stage of a capital trial.[5]

We can find no stated explanation why the Legislature added to the proposed Article 37.07, Section 3(a), the phrase "including the prior criminal record of the defendant, his general reputation and his character," and kept the proviso from the former article that a prior criminal record means "a final conviction in a court of record, or a probated or a suspended sentence that had occurred prior to trial." We surmise that the phrasing in the present statute was a simple adoption of the language of Article 37.071 which had been interpreted by this Court on numerous occasions. See *Grunsfeld v. State*, 813 S.W.2d 158, 166–67 (Tex.

App.—Dallas 1991) (detailing House and Senate actions on the proposed amendment).

This simple addition did not defeat the attempt to broaden the scope of admissibility because the word "including" means that a prior criminal record is no longer exclusively required. See part II(B)(1), supra. See also *Stavinhoa v. State*, 808 S.W.2d 76 at 78 n. 2 (Tex.Cr.App.1991) ("In that amendment [of 37.07, § 3(a)] the Legislature provided that evidence may be admitted at the punishment phase of trial 'as to any matter the court deems relevant to sentencing, including' those matters previously made expressly admissible under the statute, viz: the prior criminal record of the defendant, his general reputation and his character. Query what the Legislature means by 'relevance' in this context." [cites omitted]).

(4) *The common law or former statutory provisions, including laws on the same or similar subjects.*

Article 37.071, Section 2(a), controls admissibility of evidence in the punishment phase of capital trials and is quite similar to the amended version of Article 37.07, Section 3(a). That is, the phrase in Article 37.071, Section 2(a)—"evidence ... as to any matter the court deems relevant"—is the phrase that was added to Article 37.07, Section 3(a), when it was amended. Evidence of unadjudicated extraneous offenses has long been admissible under this phrase in the punishment stage of capital trials. See *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979); *Wilder v. State*, 583

---

5. Section 2(a) of Article 37.071 provides in pertinent part that in the punishment phase of a capital murder trial

".... evidence may be presented by the state and the defendant or the defendant's counsel *as to any matter that the court deems relevant to sentence,* including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Texas...." Article 37.071, Section 2(a), V.A.C.C.P. (emphasis added).

Unadjudicated extraneous offenses have long been admissible in the punishment phase of capital trials, with the rationale for admissibility usually being that extraneous offenses are relevant to determining the statutory issue of the future dangerousness of a defendant. See *Wilder v. State*, 583 S.W.2d 349, 361 (Tex.Cr.App. 1979) ("Nothing in Article 37.071(a) requires a final conviction for an extraneous offense to be admissible at the punishment stage."). *Cf. Reed v. State*, 644 S.W.2d 479, 481 (Tex.Cr.App.1983) (Testimony relative to future dangerousness held not admissible at punishment stage of noncapital trial because of language in pre-amendment Article 37.07).

S.W.2d 349 (Tex.Cr.App.1979); *Hammett v. State,* 578 S.W.2d 699, 709 (Tex.Cr.App. 1979). Thus, the addition of the phrase to Article 37.07, Section 3(a), clearly suggests that evidence of unadjudicated extraneous offenses is now admissible in the punishment phase of non-capital trials.[6]

Judge Clinton's explanation of the distinction between Article 37.071 and the pre-amendment Article 37.07 in *Rumbaugh v. State,* 589 S.W.2d 414 (Tex.Cr.App.1979), further emphasizes the argument for construing the sections in a like manner. He stated:

"Nothing in Article 37.071 requires that there be a final conviction for an extraneous offense to be admissible at the punishment phase of the [capital] trial. The statement implies a comparison with Article 37.07, Section 3(a), V.A.C.C.P., which, in the punishment phase of a non-capital trial, does limit proof of a defendant's prior criminal record to final convictions and other adjudicated offenses. The significance of the comparison is this: In a non-bifurcated trial, in which the issues of guilt and punishment are litigated at the same time, there is a rule of evidence that excludes proof of extraneous offenses because it confuses and prejudices the issue of guilt. The purpose of bifurcated procedure is to eliminate the need for this exclusionary rule of evidence. The very choice by the Legislature to establish a bifurcated procedure in capital cases, like the one in non-capital cases, evinces its intention to eliminate the rule of evidence that excludes proof of extraneous offenses. Had it wanted to limit the proof in capital trials to adjudicated offenses, it could have provided so in Article 37.071, as it has in Article 37.07. There being nothing in Article 37.071 to require such a limitation, this Court cannot impose it. The net result is that, by choosing a bifurcated procedure, the Legislature abolished the rule of evidence that excluded proof of extraneous offenses; by deliberately choosing not to abolish the other exclusionary rules of evidence, the Legislature has kept them in effect at the punishment phase of a capital trial." *Rumbaugh v. State,* 589 S.W.2d 414, 418 (Tex.Cr.App.1979). [footnotes and citations omitted].

The choice by the Legislature to amend Article 37.07 by adding the language of Article 37.071 clearly evinces a legislative intent to remove the restriction from Article 37.07 requiring exclusion of unadjudicated extraneous offense evidence from the punishment phase in non-capital trials.

(5) *The consequences of a particular construction.*

This guideline, more than any other, supports the position that the Legislature intended to allow the admission of unadjudicated extraneous offense evidence at the punishment stage of a non-capital trial. As previously stated, it is presumed that the Legislature intends to change the law whenever it enacts an amendment. Furthermore, this Court has an obligation to construe the amendment in a way that gives it effect rather than in a way that renders the amendment a nullity. *Ex parte Trahan,* 591 S.W.2d at 842. The construction the majority gives the statute effectuates no change and renders the amendment completely useless.

## III.

## THE RULES OF EVIDENCE AND RELEVANCY

The adoption of the Texas Rules of Criminal Evidence in September, 1986, significantly changed the legal standards of admissibility of evidence in criminal trials. See Herasimchuk, "The Relevancy Revolu-

---

**6.** See 33 Goode, Wellborn & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 404.7 (1991 Supplement to 1988 Texas Practice at p. 41) (footnotes omitted). "In 1989, following the *Murphy* decision, the legislature amended Article 37.07 § 3(a) to make admissible 'any matter the court deems relevant to sentencing.' The significance of this language may lie in the fact that it is virtually identical to that employed in Article 37.071(a) which governs the punishment phase of capital cases. Inasmuch as that article is viewed as authorizing the admission of unadjudicated extraneous offenses, it would be reasonable to argue that the new language has the same effect in non-capital cases."

tion in Criminal Law: A Practical Tour Through the Texas Rules of Criminal Evidence," 20 St. Mary's L.J. 737 (1989) (hereinafter "The Relevancy Revolution"). The codified rules of evidence are rules of inclusion, not exclusion, and favor the admission of all logically relevant evidence except as provided otherwise by constitution, statute, rules of evidence or rules prescribed pursuant to statutory authority. Rule 402, Tex. R.Crim.Evid. A trial court's first step in determining admissibility, therefore, must be to ascertain whether the evidence is "logically relevant." See Rule 104(a), Tex. R.Crim.Evid. (Preliminary questions concerning admissibility of evidence shall be determined by the court).

Evidence is "logically relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Tex.R.Crim.Evid. But logical relevance at the punishment stage of a non-capital trial is difficult to determine because there are few, if any, discrete fact issues for the jury to decide. *Miller–El v. State*, 782 S.W.2d 892, 896 (Tex.Cr. App.1990). Indeed, this Court has held that deciding what punishment to assess is a normative process, policy oriented and not intrinsically fact bound. *Murphy v. State*, 777 S.W.2d at 63. Thus, punishment evidence is not "relevant" in the sense that it tends to make more or less probable some identifiable fact; rather, punishment evidence is simply information that has been deemed appropriate, either by the Legislature or by the courts, for fact finders to consider in assessing punishment. *Murphy v. State*, 777 S.W.2d at 63. Since The Rules of Criminal Evidence apply at sentencing only "to the extent matters of evidence are not provided for in the statutes which govern the procedure therein or in another court rule," we shall look first to the statute that governs procedure during

the punishment stage in non-capital trials to see if it provides any guidance for determining what evidence is appropriate to punishment. Rule 1101(d)(1), Tex.R.Crim.Evid.

Article 37.07, V.A.C.C.P., governs procedure at the punishment stage of non-capital trials and provides the only legislative guidelines for determining what is appropriate to punishment. First, Article 37.07, Section 3(a), authorizes the admission of any evidence the court deems relevant to sentencing. This gives the trial court an almost unlimited discretion to determine relevancy to sentencing, but restricts admissibility by further requiring that evidence may be offered only "as permitted by the Rules of Evidence." See Rule 402, Tex.R.Crim.Evid. (relevant evidence not admissible if proscribed by statute, constitution, rules). Second, Section 3(a) provides a list of specific examples of evidence expressly admissible at punishment.[7] In light of the rule that only relevant evidence is admissible, we can thus infer that these specific examples have been predetermined to be appropriate or relevant to punishment. See Rule 402, Tex.R.Crim.Evid. (relevant evidence is admissible, irrelevant evidence is not). Since character evidence is expressly included in this list, we conclude that evidence of the character of a defendant is admissible at punishment, and ergo, relevant to punishment by legislative mandate.

The relevancy of character evidence does not, however, guarantee its admissibility. We have just acknowledged that the admissibility of character evidence, or any evidence determined relevant to punishment for that matter, is dependant on the Rules of Evidence. Therefore, we must ascertain whether the Rules of Criminal Evidence exclude proof of character at the punishment stage.

Rule 403 in the Rules of Criminal Evidence permits the exclusion of relevant evidence, inter alia, if the court finds that the

7. Section 3(a) lists specific examples of evidence predetermined by the Legislature to be relevant to the assessment of punishment: (1) defendant's prior criminal record, (2) defendant's general reputation, (3) defendant's character, (4) defendant's conduct while participating in a

program under Article 17.40 or 17.42(a) of this code as a condition of release on bail; and (5) under certain conditions, defendant's adjudication of delinquency based on violation of a felony law.

prejudicial effect of such evidence substantially outweighs its probative value. This general rule is followed by several rules that in circumscribed situations, perform this balancing for the court. See Rules 404 and 406–412, Tex.R.Crim.Evid. These rules are the result of courts having been faced on numerous occasions with the same evidentiary scenario and having repeatedly found either that the probative value of a certain type of evidence is outweighed by various counterfactors, or that the probative value consistently outweighs the prejudicial effect. Herasimchuk, "The Relevancy Revolution" at p. 794. One of these predetermined balancing rules, Rule 404(c), states in plain and simple language that evidence of a prior criminal record and all "other evidence of an accused's character" may be offered at the punishment stage.[8] Thus, the probative value of character evidence, as well as evidence of a prior criminal record, is never substantially outweighed by its prejudicial effect and it is admissible. The reasonable result of this predetermined balancing is that evidence of both "good" and "bad" character is now admissible at the punishment deliberations in non-capital trials. Moreover, Rule 404(c) places absolutely no restrictions on the "other evidence of character;" it does not distinguish between the various reasons for offering evidence as does Rule 404(b)

nor does it distinguish between the methods for proving character as established by Rule 405(b). Since all character evidence for whatever purpose in whatever form is admissible under Rule 404(c) at punishment, this rule, standing alone, does not preclude the admission of character evidence.

Unfortunately, determination of the relevancy and admissibility of character evidence does not guarantee the admissibility of unadjudicated extraneous offense evidence, because Rule 405 of the Rules of Criminal Evidence limits the methods for proving character.[9] See *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980) (determination of relevancy does not supersede rules of evidence regarding manner of proof); *Hernandez v. State*, 800 S.W.2d 523, 525 (Tex.Cr.App.1990) (character evidence may be admitted at punishment but its admission is governed by Rule 405).

Rule 405 provides the following three methods for proving character: (1) reputation of the person in the community; (2) personal opinion testimony of witnesses who know the person; and (3) specific instances of conduct. Unadjudicated extraneous offenses certainly are specific instances of conduct, but Rule 405(b) further limits proof of specific conduct to show character in "cases in which character or trait of character of a person is an essential

8. Rule 404(c) provides in full:

   "(c) **Character relevant to punishment.**
   In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, Code of Criminal Procedure."

9. Rule 405(b) has a counterpart in the Federal Rules of Evidence; in fact, Rule 405(b) was taken verbatim from Federal Rule 405(b). When language is adopted from federal rules, the judicial interpretation as well as the wording is usually adopted. See *Moreno v. State*, 807 S.W.2d 327, 332 (Tex.Cr.App.1990); *Campbell v. State*, 718 S.W.2d 712, 717 (Tex.Cr.App.1986). Since the Federal Rules of Evidence, including Rule 405(b), do not apply to the punishment phase of trials in federal courts, it is arguable that Texas Rule 405(b) was not intended to apply at the punishment phase. See *U.S. v. Paden*, 908 F.2d 1229, 1235 n. 3 (5th Cir.1990),

cert. denied, —— U.S. ——, 111 S.Ct. 710, 112 L.Ed.2d 699 (1991) (rules of evidence, except for privileges, do not apply to sentencing). There are, however, two important distinctions between punishment in the federal system and punishment in the Texas system that must be considered: (1) punishment in the federal system is determined solely by the court, while punishment in Texas may be by jury or by the court; and (2) Federal Rule of Evidence 1101(d)(3) states that the Federal Rules of Evidence, except for the privileges, are not applicable to sentencing proceedings; but Texas Rule of Evidence 1101(d)(1) states that the Texas Rules of Evidence apply to sentencing or punishment, whether before the court or a jury, to the extent "matters of evidence are not provided for in the statutes which govern procedure therein or in another court rule prescribed pursuant to statutory authority." We do not analyze these distinctions but recognize them and note that we do not choose to rely on an analogy between the Texas Rule 405(b) and the Federal Rule 405(b) for our decision today.

element of a charge, claim, or defense." This language raises the same confusion that determining relevancy to punishment raised, because there are no "elements" to be determined at punishment.

The term "essential element" is nowhere defined, but the Penal Code defines "element of an offense" as the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense. V.T.C.A., Penal Code, Section 1.07(a)(13). Each offense defined in the Penal Code designates which elements are necessary to prove that offense. Proof of each element in a particular offense is essential to determining guilt or innocence, but there are no elements to be proved at punishment.

As noted previously, punishment is a policy determination which is not guided by specific elements, but by information deemed appropriate to the process by judicial or legislative mandate.[10] It follows then that any information deemed appropriate to punishment deliberations by judicial or legislative mandate would necessarily be the elements essential to making the policy decision. In general, evidence appropriate or relevant to punishment has a relationship to the circumstances of the offense or to the circumstances of the defendant. See *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex.

Cr.App.1979); *Davis v. State*, 478 S.W.2d 958 (Tex.Cr.App.1972) (courts routinely instruct jurors they may consider all evidence that was admitted during guilt/innocence at punishment as relevant to circumstances of the offense). Character evidence is most certainly a circumstance of the defendant; ergo, character evidence is germane to punishment deliberations. Rule 404(c), explicitly makes evidence of character admissible at punishment; ergo, under Rule 404(c) this Court has decided that character is germane or essential to the determination of punishment. Article 37.07, Section 3(a), likewise declares that character is admissible at punishment; ergo, the Legislature has mandated that character is appropriate or essential to punishment. It is apparent from these judicially created rules and this legislative mandate that character is essential to the assessment of punishment. Moreover, there is no express language in the rules or the statute that limits proof of character to reputation or opinion. See *Hedicke v. State*, 779 S.W.2d 837, 842 (Tex.Cr.App. 1989) (Legislative use of terms reputation and character, joined by conjunction *and* evidences intent to abrogate old rule that reputation was the only approved method of proving character); but see *Murphy v. State*, 777 S.W.2d at 63.[11]

**10.** Query whether the Legislature has determined elements or specific issues for guiding the process of assessing punishment in V.T.C.A., Penal Code, Section 1.02(1)(A–C)? Section 1.02 states:

"The general purposes of this code are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which state protection is appropriate. To this end, the provisions of this code are intended, and shall be construed, to achieve the following objectives:
(1) to insure the public safety through:
　(A) the deterrent influence of the penalties hereinafter provided;
　(B) the rehabilitation of those convicted of violations of this code; and
　(C) such punishment as may be necessary to prevent likely recurrence of criminal behavior ..."

**11.** In *Murphy* this Court held that Article 37.07, Section 3(a), prior to its amendment, precluded admission of specific conduct to show character

at the punishment phase of trial. *Murphy v. State*, 777 S.W.2d at 64. The plurality opinion initially reasoned that Section 3(a) authorized admission of character evidence at punishment, but Section 3(a) simultaneously authorized proof of only final convictions, thereby excluding proof of extraneous unadjudicated offenses or specific conduct to show character. *Id.* at 61. Judge Clinton, writing for the plurality, went on to say that

"... We also find it untenable that specific acts may be admitted at the punishment phase to prove some circumstance of the offender *apart* from his character *per se*.... Thus, albeit in terms anachronistic from its inception, Article 37.07, § 3(a), supra, affords the only indicator of what the Legislature deemed *in* appropriate to the punishment decision, *viz:* specific conduct. It seems incredible that the Legislature would have bothered to limit proof of character *per se*, by excluding evidence of specific conduct to that end, while at the same time contemplating identical evidence would always be admissible as 'relevant' to the broader category, circumstances

Accordingly, the Rules of Evidence do not prevent a trial court from exercising his discretion to find specific conduct evidence in the form of unadjudicated extraneous offenses to be both relevant and admissible at the punishment stage of a non-capital trial.

I join the comments of both Judges Campbell and White, and dissent.

CAMPBELL, Judge, dissenting.

We granted review of these causes, pursuant to Texas Rule of Appellate Procedure 200(c)(1), to determine whether Article 37.07, § 3(a), as amended in 1989, allows the admission of extraneous conduct evidence at the punishment phase of non-capital trials. The plurality says no; I say yes.

The statute in question now provides in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

(Emphasis added.) The emphasized portion was inserted by legislative amendment effective September 1, 1989; the rest of the statutory language was left unchanged. The Legislature apparently did not realize that its insertion of the amendatory language would lead inevitably to serious problems with interpretation. See M. De-Koatz, et al., *Assessing Punishment:*

*What Should the Jury Know?*, 55 Texas B.J. 355 (1992).

Paradoxically, the plurality now interprets the amendatory language in a way that leaves it essentially ineffectual. This interpretation was arrived at because of the plurality's misapplication of the canons of construction and its failure to recognize relevant legislative history. In my view, the legislators who amended Article 37.07, § 3(a), in 1989 almost certainly intended for the amendment to allow the admission of extraneous conduct evidence at the punishment phase in a non-capital case, so that jurors would have a complete picture of the defendant when they were assessing punishment.

The plurality's first mistake rests in its use of the "canons of construction." Over the centuries English and American courts have developed numerous canons to aid in the process of statutory interpretation. These canons—really nothing more than specialized proverbs—are based on commonsense notions of how ordinary people use language to express meaning. *Boykin v. State*, 818 S.W.2d 782, 785, fn. 3 (Tex.Cr.App.1991). When used with care, the canons can help *suggest* what legislators had in mind when they drafted particular statutory language. When used improperly, however, the canons can as easily lead away from the legislators' probable intent as toward it.

The plurality focuses exclusively and unrealistically on only one canon, the one stating that, if possible, all parts of a statute should be harmonized and given effect. See *Thomas v. State*, 164 S.W.2d 852, 855 (Tex.Cr.App.1942). This canon, based as it is on the sound notion that when legislators enact a statute they surely intend all parts

---

of the offender. Loath to nullify the apparent legislative intent, we hold that Article 37.07, § 3(a), supra, precludes admission of specific conduct to show character or anything else under the rubric of circumstances of the offender at the punishment phase of trial, either in mitigation or aggravation of punishment." *Id.* at 64. (emphasis in original).

This argument has been extended to apply to Rule 404(c). That is, since the "criminal record" in Article 37.07, Section 3(a), excludes

proof of character with specific conduct or unadjudicated extraneous offenses, the use of "criminal record" in Rule 404(c) would also exclude proving "other evidence character" with unadjudicated extraneous offenses. In light of the amendment of Article 37.07, Section 3(a), this rationale is no longer apropos. See part II B(1), supra. Furthermore, there is nothing in Rule 404(c) to indicate that proof of character was to be limited to only two of the three methods.

of it to be effective, is highly persuasive when a court is faced with a statute which was wholly enacted in the first instance. The canon is less persuasive, however, when the court is dealing with a major amendment to a pre-existing statute. The canon is significantly less persuasive when the amendment causes the statute to become facially ambiguous.

When a court seeks to interpret a statute that has been amended and, as a result of the amendment, is ambiguous, it seems to me that, realistically, the legislative purpose behind the amendment will be more closely approximated if the court focuses on the amendatory language and on those canons—completely ignored by the plurality—dealing specifically with such language.

Three such canons come immediately to mind. First, as we recognized in *Ex Parte Trahan*, 591 S.W.2d 837, 842 (Tex.Cr.App. 1979), "[i]n enacting an amendment the Legislature is presumed to have changed the law, and a construction should be adopted that gives effect to the intended change, rather than one that renders the amendment useless." Second, whenever the Legislature has used a phrase in a statute in one sense and with one meaning, and subsequently uses the same phrase in legislating again on the same subject matter, the Legislature is presumed to have used the phrase the second time in the same sense and with the same meaning. 2B *Sutherland Stat. Const.* § 51.02 (5th ed.1992); H. Black, *Handbook on the Construction and Interpretation of the Laws* § 70 (1896); 82 C.J.S. *Statutes* §§ 366 & 370 (1953). Third, if, after a statute has been interpreted by a court, the Legislature makes a radical change in the statute's phraseology, an intention is thereby

shown to establish a rule different from that announced by the court. 82 C.J.S. *Statutes* § 384 (1953).

Applying these three canons to Article 37.07, § 3(a), I cannot but conclude that the Legislature most likely intended for the 1989 amendment to significantly alter the meaning of the statute and to allow for the admission of extraneous conduct evidence at the punishment phase of non-capital trials. Certainly, it was no accident that the amendatory language inserted into Article 37.07, § 3(a), was the *broadest possible language* and *essentially identical to language in Article 37.071(a)—language that we have long held allows for the admission of extraneous conduct evidence at the punishment phase of capital trials.* See, e.g., *Gentry v. State*, 770 S.W.2d 780, 793 (Tex.Cr.App.1988). I cannot believe the Legislature chose essentially identical language to achieve a radically different outcome.

The legislative history of Article 37.07, § 3(a), also supports my conclusion. In *Murphy v. State*, 777 S.W.2d 44, 47 (Tex. Cr.App.1988), in our opinion on original submission handed down April 6, 1988, we interpreted the pre–1989 amendment version of the statute to prohibit the admission of extraneous conduct evidence at the punishment phase of non-capital trials. Presiding Judge Onion and Judge White vigorously dissented to that holding. *At the very next opportunity*, the Legislature amended Article 37.07, § 3(a), by inserting the phrase "any matter the court deems relevant to sentencing" *from Article 37.071(a).* Again, I cannot believe the timing of the amendment was an accident and that the amendment was not a direct attempt to legislatively abrogate the holding in *Murphy* on original submission.[1]

---

**1.** Interestingly, a reader of both the plurality opinion and Judge Clinton's concurring opinion might conclude that the solution to the problem of what evidence is admissible at the punishment phase of a non-capital trial is now really quite simple. The plurality opinion, citing *Murphy* on rehearing, finds that evidence such as "family background, religious affiliation, education, employment history and the like are appropriate considerations in the assessment of punishment," *separate and apart* from the de-

fendant's prior criminal record, general reputation, and character. Op. at 524, fn. 7. Judge Clinton, also citing *Murphy* on rehearing, concludes that circumstances of the offense and *the offender* are admissible, the latter being "'appropriate' if for no other reason than that, in the absence of express legislative policy, courts have traditionally believed that punishment should fit the particular criminal as well [as the crime]." Op. at 544–545.

The plurality concedes that the term "including" in the 1989 amendment is a term of enlargement and not of limitation and that, therefore, "evidence *other than* prior criminal record, general reputation and character is admissible" at the punishment phase of non-capital trials under Article 37.07, § 3(a). Op. at 524–525 (emphasis in original). But the plurality goes on to reason that "retention of the term 'prior criminal record' and its definitional provision indicates an intent to maintain limitations on the admission of specific conduct evidence, including unadjudicated extraneous offenses." Op. at 524–525. Again, the plurality misses the point. The notion that "[i]t would not make sense that the legislature intended that extraneous, unadjudicated offenses and their details be admissible, but that prior convictions must be final before being admissible and even then that details of the underlying offenses are to be excluded" assumes erroneously that the law would remain unchanged as to the admission of the details underlying prior convictions. However, if, as I believe, the Legislature intended to open the punishment door to prior unadjudicated acts [2] in general, then it would logically follow that *adjudicated* facts supporting prior convictions would *also* be admissible to show, if nothing else, the seriousness of the offenses represented by those prior convictions. The idea, after all, of the 1989 amendment was to open up the punishment hearing to allow the jury to get a complete picture of the offender.

I must address finally the Legislature's retention of the phrase "as permitted by the Rules of Evidence." The retention of this phrase is significant because Rule 405 would seem to preclude the admission of extraneous conduct evidence at the punishment phase of non-capital trials. But, again, the Legislature's retention of this phrase does not dissuade me of the correctness of my interpretation of Article 37.07, § 3(a). Rather, along with Professors Goode, Wellborn, and Sharlot, I think it is reasonable to conclude

> that the [1989] amendment was intended to and has the effect of expanding the definition of relevant evidence found in Criminal Rule 404(c) [to include evidence of extraneous conduct].[3] Although this is grammatically difficult, it would seem the only way to give effect to the legisla-

How do these two opinions illuminate the effect of the 1989 amendment? As I read these opinions, a defendant in a non-capital trial may introduce evidence that, for example, he is a model father, a deacon in his church, a holder of a doctoral degree in physics, and has been steadily employed for the previous twenty years. And what sort of evidence might the State, under the plurality's interpretation of the present statute, offer to counter the defendant's evidence? If the State had evidence that the defendant had looted his church's treasury while he was a deacon, might the State offer such evidence? Or will the State be limited to offering character or reputation testimony that the defendant is not a peaceable and law-abiding citizen, leaving the jury to wonder how the defendant could be perceived thusly by others? If the State had evidence that the defendant had sexually abused his children, might the State offer such evidence? Or will the State be limited once again to presenting only character and reputation testimony? Indeed, the plurality leaves undefined the term "circumstances of the offense and the offender."

These questions are basically rhetorical but serve to demonstrate that the plurality's interpretation of Article 37.07, § 3(a), renders the 1989 amendment ineffectual. The net loser when all this is sorted out is not the Legislature, or even the prosecution, but rather the people who sit on criminal juries in this state. For it is jurors who are left to make the difficult punishment decisions in criminal cases without having the benefit of all the "circumstances of the offense and the offender."

From my interpretation of the plurality opinion, the answer to the question of what change was wrought by the 1989 amendment is obvious—no change at all. The jurisprudential quagmire that has encased Article 37.07, § 3(a), is alive and well.

2. It should be noted that a defendant's extraneous conduct may reflect adversely on him—and thus be relevant to punishment—regardless of whether that conduct might give rise to criminal liability. *Plante v. State,* 692 S.W.2d 487, 490, fn. 3 (Tex.Cr.App.1985).

3. Texas Rule of Criminal Evidence 404(c) provides:

> In the penalty phase, evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused. Other evidence of his character may be offered by an accused or by the prosecution. Nothing herein shall limit provisions of Article 37.071, Code of Criminal Procedure.

tive language [in the amendment]. Even if the courts accepted this interpretation they would continue to have the authority [under the statute] to admit or exclude proffered evidence, other than that provided for specifically in Article 37.07 § 3(a), on the basis of their decision as to its relevance to the punishment decision.[4]

S. Goode, O. Wellborn & M. Sharlot, *Guide to the Texas Rules of Evidence* § 404.7, fn. 10.90 (Supp.1991). Furthermore, under this interpretation of the statute all other rules of evidence would still be applicable, and trial courts would admit evidence of extraneous conduct as limited by, for example, Rules 401, 402, and 403.

I would reverse the Fifth Court of Appeals' judgment in *Grunsfeld* and affirm the Second Court of Appeals' judgment in *Hunter.*

WHITE, Judge, dissenting.

Today, the aggressive and assertive plurality of this Court, unsatisfied with our Legislature's decision to permit the juries of this state to receive relevant, realistic and accurate descriptions of the character and past history of convicted defendants so that the juries may fairly assess sentences, relies upon its misperception of the authority of its electoral mandate to foist upon the juries of this State its own judicially legislated changes to TEX.CODE CRIM.PROC. ANN.Art. 37.07, § 3(a). I vigorously dissent, and agree with Presiding Judge McCormick and Judge Campbell's views criticizing the plurality's attempt to interpret the legislative intent behind the 1989 ·changes to Art. 37.07 § 3(a). I also agree with Judge Benavides' views concerning the interpretation of the language of the amendments to Art. 37.07 § 3(a).

In my view, the decision of the plurality reflects a basic and cynical mistrust of the average citizen's ability to fairly and impartially assess the appropriate punishment for a person convicted of a crime. I can find no other explanation for the plurality's decision to blithely overturn the legislative

changes to Art. 37.07 § 3(a) and place juries back in the position they were in after this Court's prior decision in *Murphy v. State,* 777 S.W.2d 44, at 56–68 (Tex.Cr.App. 1988). In my dissent to that opinion, I explained my position concerning a jury's need for all relevant information when deciding whether or not to probate the sentence of a defendant.

"Juries comprised of law abiding citizens of the community in which the defendant, if given probation, will reside, are vested with the discretion to assess a fair and appropriate sentence. In their determination of the appropriateness of probation, they are entitled to know the defendant's criminal history, just as the judge is provided in a pre-sentence report when he considers the same. See, Art. 42.12, § 4. There is nothing to show that a jury cannot be as fair and impartial as a judge or that the prior criminal history is not as every bit important to the juries' common sense determination of the issues."

*Murphy v. State,* 777 S.W.2d, at 53. See, also, *Murphy v. State,* at 73. Under the authority of the new Art. 37.07 § 3(a), I believe that juries are entitled during the punishment stage of a trial to hear a complete description of the relevant criminal history of a defendant in all cases, whether a defendant is eligible for probation or not.

To the extent that the plurality is uncomfortable with the prospect of a jury being permitted to hear the whole truth about a convicted defendant, they can take comfort in the fact that the Legislature, in its wisdom, did not permit the trial courts of this State unbridled discretion in what those courts may choose to allow to be admitted into evidence during the punishment phase of a trial. Before admitting the evidence, the trial court must first be satisfied that the proffered evidence is relevant to a material fact in issue. Art. 37.07 § 3(a) sets out:

"... evidence may be offered by the state and the defendant as to any matter

---

**4.** Presumably, evidence is "relevant" to the punishment decision if it helps the jury decide what level of punishment will best fulfill the objec-

tives of punishment (i.e., general and specific deterrence, rehabilitation, etc.) in the defendant's case.

the court deems relevant to sentencing, ..."

Pursuant to the requirements of the statute, a trial court must first be satisfied that the proffered evidence passes muster under TEX.R.CRIM.EVID. Rule 401.[1] If the trial court finds the proffered evidence to be relevant, it must then determine under TEX.R.CRIM.EVID. Rule 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. These requirements sufficed to protect the defendant in *Montgomery v. State*, 810 S.W.2d 372, at 386–390 (Tex.Cr. App.1990), if not at trial, then on appellate review of the trial court's decision. *Montgomery v. State, supra,* at 390–397. This would be sufficient for any defendant, provided that trial counsel has insured that error has been preserved.

It is difficult to imagine how the Legislature can successfully amend Art. 37.07 § 3(a) in order to convince the aggressive and assertive plurality of this Court that they intend for a jury to be permitted to review relevant unadjudicated criminal actions of a defendant during the assessment of punishment for a non-capital crime. Perhaps they will print the amendatory language in extra-large bold type, not unlike that of a grade school primer. Or perhaps they will, somehow, be able to find more direct language to use, much like a farmer would use a two-by-four across the nose of a recalcitrant mule in order to convince it that it is time to get off its hind quarter and pull the wagon. Whatever method the Legislature selects, it will be interesting, to say the least, to witness how the aggressive and assertive members of this Court rewrites it.

This is another attempt to prevent law abiding citizens of Texas (juries) from meting out proper punishment to those criminals who rape, rob and murder their children and their families.

I would reverse the decision of the Court of Appeals in Grunsfeld, remanding for consideration of points of error not reached on original submission, and affirm the Court of Appeals decision in Hunter. To the decision of the plurality to do otherwise, I dissent.

BENAVIDES, Judge, dissenting.

I am convinced that the Code of Criminal Procedure, article 37.07, section 3(a), permits trial judges to receive, among many other things, evidence of prior unadjudicated extraneous offenses offered to prove that a more severe sentence should be imposed. I believe this because it seems to me that the statute authorizes trial judges to determine the punishment issues in non-capital trials within limits given by the Texas Rules of Criminal Evidence, and because evidence of prior misconduct, whether finally adjudicated or not, is relevant to reasonable punishment criteria which do not depend on an evaluation of the defendant's character.

## I.

### *"Deems Relevant to Sentencing"*

The 1989 amendment to article 37.07, section 3(a) is not grammatically complex. Where once the parties were permitted to introduce evidence of the defendant's character, reputation, and prior criminal record, the trial judge may now receive any evidence he deems relevant to sentencing, including evidence of the character, reputation, and prior criminal record of the defendant. Acts 1989, 71st Leg., R.S., ch. 785, § 4.04, effective September 1, 1989. It seems indisputable to me that the only significant consequence of this amendment is to provide that issues listed in the statute, formerly a more or less complete survey of punishment-phase evidence, should now be regarded as merely illustrative and not taken to impose any limitation on admissibility aside from the trial judge's impression of relevancy. I do not think that the plain language of this statute is reasonably susceptible of any other reading.

---

**1.** Rule 401 reads as follows:
Definition of "Relevant Evidence"
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In the first place, it follows unambiguously from the legislature's use of the word "including" that character, reputation, and prior criminal record were not meant to be an exhaustive list of admissible evidence. In ordinary English, appearance of this word in a context like the one involved here always means that the items or examples which follow are representative or particularly interesting, but not completely descriptive. *See* Tex.Gov't Code Ann. § 311.005(13) (West 1992). Clearly, unadjudicated extraneous offenses do not qualify for inclusion in a criminal record because they have not produced final convictions or probated sentences. *See* Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a). But neither have deeds of kindness, heroism, and self-sacrifice. None of these things is expressed in the partial list of admissible punishment phase evidence. But that does not mean it must be excluded. It is not whether something is part of the defendant's prior criminal record that determines its admissibility, but whether the trial judge deems it relevant to sentencing.

The plurality argues that the legislature would not have retained the restrictive definition of "prior criminal record" if it intended unadjudicated extraneous offenses to be deemed relevant by the trial judge. Unless construed as a limitation on the "deems relevant" language, the Court maintains, this portion of the statute, deliberately retained by the legislature in spite of efforts to remove it, would be essentially superfluous. Accordingly, we are asked to infer that the legislature intended it as a limitation despite its earlier use of the word "including."

Of course, I concede that elimination of the "including" clause and of the "prior criminal record" definition would have been a much cleaner way to express the statute as I interpret it. But, use of the word "including" always renders the language following it useless in this sense. Besides, the plurality's assertion that it "can think of no other reasonable explanation for the retention of those references and the accompanying definition other than the intent of the legislature to maintain a *limitation*

on the admission of extraneous offenses at punishment in a noncapital offense[,]" is unimaginative. Op. at 525–526, n. 11 (emphasis added). Perhaps the legislature merely intended to ensure that its amendment would not be read to encourage, or even to allow, exclusion of those things which were admissible before. Perhaps it merely thought that the inclusion of traditional examples would be comforting to trial judges. But whatever it may have intended in silence is essentially unimportant to me in light of the statutory language itself.

The dissenting opinions of Judge Campbell and Presiding Judge McCormick, with which I agree in many respects, successfully refute the plurality's appeal to canons of statutory interpretation. But the canons to which both they and the plurality refer are directed at a discernment of legislative intent. I much prefer, under the circumstances here, the approach taken by this Court in *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991), wherein a majority resolved to interpret unambiguous statutes according to their plain meaning rather than hazard an investigation of the legislature's usually inscrutable motives. The plurality simply assumes that the legislature would deliberately enact a law providing that the word "including" means "without limitation," pass another law using the same term without further explanation, and then expect the courts to interpret it as if it were a limitation in fact. *Cf. Garcia v. State*, 829 S.W.2d 796, 799–800 (Tex.Crim. App.1992). To so construe the law is, in my opinion, to sanction a deliberate effort by elected representatives of the people affirmatively to mislead them about the purpose of important public legislation. I cannot approve any such interpretation of our law.

Certainly, I agree with the plurality that "insertion of the term "including" does not mean that "any matter the court deems relevant to sentencing" is not subject to other limitations the legislature may see or may have seen fit to impose." Op. at 524, n. 8. But such other limitations may not appear in the very clause beginning with the word "including." Rather, they must

be expressed elsewhere, using the language of limitation, not of enlargement. Because the legislature has done no such thing in this case, I am disinclined to read a limitation of that sort into the statute.

On the other hand, I am equally reluctant to believe that the amendment with which we are here concerned effectively incorporated our complex capital sentencing jurisprudence into a fundamentally different noncapital punishment scheme. It has been argued in this connection, particularly by Presiding Judge McCormick in dissent, that our legislature's choice of the language "deems relevant to sentencing," which also figures prominently in the Texas capital sentencing statute, implies a rather specific intention by the legislature to make unadjudicated extraneous offenses admissible on the same terms as in capital cases. I do not agree with this view. As Judge Clinton rightly points out in his concurring opinion, holding that article 37.07, section (3)(a) has the same meaning as article 37.071(a) does not indicate that the two statutes always have the same extension. For example, unadjudicated extraneous offenses might be admissible under one and not the other if they were actually relevant to the issues in a capital case but not to the issues in a noncapital case.

That is why relevancy is such an important key to this problem. If the issues are different in capital and noncapital cases, then evidence will be relevant or irrelevant in each kind of case depending upon its tendency to increase or decrease the probability of resolving those issues in a particular way. And because evidence relevant to one issue might not be relevant to another, it may turn out that an unadjudicated extraneous offense is relevant in a capital context but not relevant in a noncapital context where the issues are different.

And that is the rub. What, after all, *are* the issues in a noncapital punishment hearing? In a capital case, of course, the issues are reasonably clear, at least if we leave the Eighth Amendment out of it for a moment. The legislature has prescribed them specifically—deliberation, dangerousness, and provocation before September 1, 1991, or dangerousness and contemplation of death after. Tex.Code Crim.Proc.Ann. art. 37.071(b). But nothing of the kind exists in our law for noncapital cases. The legislature has not said, for example, that more dangerous criminals should get greater punishment, or that provocation militates in favor of a lighter sentence. But, by authorizing trial judges to admit whatever they deem relevant to sentencing, the legislature has necessarily empowered those judges to determine, case by case, what the material issues will be at the punishment phase of noncapital trials.

Accordingly, Judge Clinton's argument that trial judges may only "deem relevant" that which has elsewhere specifically been made a punishment issue by the legislature or that which is an intrinsically relevant circumstance of the offense or offender is unpersuasive to me. His argument is based mostly on the punishment theory underlying our plurality opinion on rehearing in *Murphy v. State*, 777 S.W.2d 44 (Tex.Crim.App.1989) (on rehearing), and upon a belief that the legislature was encouraged to amend the statute as it did by a footnote in Judge White's dissenting opinion on original submission in that case.

I do not wish to enter the debate whether the legislature was responding to our opinion in *Murphy* or to some other more generalized concern about punishment-phase evidence when it amended article 37.07, section 3(a). Impressions of legislative motivation generally read to me like makeweight for arguments which should stand on their own anyway. From my perspective, the statutory amendment merely rendered parts of *Murphy* obsolete. But the progress in our thinking about punishment-phase evidence which *Murphy* produced has significantly changed the way we look at relevancy.

If there is one thing upon which we all seem to agree, it is that relevance can never be determined without clearly defining the material issues of fact at stake in a particular controversy. The challenge in deciding what evidence should be received at punishment is not, therefore, an empirical problem. It does not involve a difficul-

ty in determining whether some fact of consequence is made more or less probable by the introduction of certain evidence. Rather it is a question of policy, necessitating a decision about which facts really are of consequence when the legislature has omitted to prescribe any.

Judge Clinton's approach, in spite of its appeal, nevertheless fails to convince me. He first construes what "the court deems relevant" to mean what "is relevant" in fact, and then opines that relevancy in the punishment context is fully elaborated by *Murphy* on rehearing. This construction has the advantage of historical plausibility and constitutional harmlessness. But, in a statute which purports on its face to describe what is relevant, I cannot imagine that any competent speaker of the English language would say that "evidence may ... be offered by the state and the defendant as to any matter the court deems relevant to sentencing" if he meant to say that the trial judge should cross-reference other statutes for additional issues to which proffered evidence might actually be relevant. I just cannot accept that the statute is vulnerable to such a reading, when its plain focus is not on relevancy in fact, but on the authority of judges to determine it.

Therefore, I do not subscribe to the plurality holding that article 37.07, section 3(a), as amended in 1989, limits the discretion of trial judges to determine punishment criteria in noncapital cases and to receive evidence which is relevant to the issues thus raised. Nor can I agree with the concurring opinion of Judge Clinton which reaches essentially the same conclusion by a different route.

## II.

### *"As Permitted by the Rules of Evidence"*

That leaves only the Texas Rules of Criminal Evidence (Rules). It has been argued that, in spite of the "deems relevant" language in article 37.07, section 3(a), the Rules prohibit proof of unadjudicated extraneous offenses because the character of a person ordinarily may not be proven by evidence of specific prior misconduct. Pre-

siding Judge McCormick responds to this contention by arguing that, because trial judges are empowered to determine punishment criteria in noncapital cases, they can simply declare the defendant's character to be an essential element of any punishment issue so as to permit proof of his specific behavior under Rule 405(b). I do not agree with this position. As I understand it, an essential element in this context would be a fact absent which a particular punishment could not lawfully be assessed. Such elements do, of course, exist in the punishment context, as we noticed in *Murphy*, 777 S.W.2d at 62 n. 10, but none of them is included in article 37.07, section 3(a). Issues of character, reputation, and prior criminal record, together with any additional matters deemed relevant by the trial judge, are optional rather than essential. The sentencer, whether judge or jury, may consider them in assessing punishment, but is never required to do so.

Still, although the Rules do forbid proof of other crimes, wrongs, or acts to show that a person behaved in conformity with his character on a particular occasion, they do not forbid proof of such things for other purposes. Thus, even if we assume that the same principles apply both at the guilt phase and at the punishment phase of trial, it would not in any case offend the Rules of Evidence to allow proof of unadjudicated extraneous offenses or other specific acts of misconduct by the defendant for the purpose of showing something other than his character. And it is not a question of whether the evidence does in fact prove character. It is just a question of whether the evidence was offered for the purpose of proving character or, instead, to prove something else.

Suppose, for example, it were suggested that persons with a history of misconduct, whether specifically criminal or not, deserve to be punished more severely than those whose past behavior has been socially acceptable, or even exemplary. Perhaps such a principle of moral culpability would not appeal to everyone. Yet there are many who would accept it. It might be thought by some that persons whose mis-

behavior is isolated and infrequent are more easily rehabilitated than those who offend society habitually. People who subscribe to such a view would necessarily deem evidence of prior unadjudicated extraneous offenses, and other instances of social behavior, both good and bad, to be relevant because it actually affects the probability of rehabilitating an accused within a short time. Or they might simply think that it discloses something meaningful about his personal moral culpability.

Of course, it is true that extensive prior misconduct is also widely believed to indicate bad character. But the notion that habitual offenders should be punished more severely is not necessarily character dependent. Rather, it is specifically conduct dependent. Thus, one need not hold that persons of bad character deserve greater punishment than persons of good character in order to favor a greater punishment for those with a history of prior misconduct. The misconduct itself, even if committed by a person of otherwise good character, might reasonably be held to indicate the need for a more protracted sentence. Likewise, bad character might well be regarded as entirely irrelevant to the issue of punishment so long as the accused is without any significant history of bad behavior. In such event, it might be entirely appropriate to assess no greater penalty for the isolated criminal conduct of bad characters than for infrequent offenders of good character.

The essential point here is that Rules 404 and 405 do not make objectionable evidence of other crimes, wrongs, or acts when it is offered to prove something different than the character of a person. And it is the trial judge who has authority under amended article 37.07, section 3(a) to decide which, if any, issues the proffered evidence will be admitted to prove, because it is the trial judge who may "deem" it relevant or not as he sees fit, subject only to the Rules of Evidence. Therefore, if the trial judge is asked to receive evidence of an unadjudicated offense, or of extraneous noncriminal conduct, for a purpose other than to show someone's character, such evidence will not be objectionable under Rule 404 or Rule 405. And, if he deems it relevant to punishment criteria other than the defendant's character, it will not be objectionable under article 37.07, section 3(a).

## III.

Finally, I think it appropriate to address Judge Clinton's argument that the plurality interpretation of article 37.07, section 3(a), and my interpretation as well, represents a delegation of legislative power to officers of the judicial branch contrary to article II, section 1 of the Texas Constitution. I am not prepared to disagree with his assessment in this respect, although the matter is somewhat less clear to me than it is to him. However, I am certain that the question is not presented in this case.

My reading of the statute at issue is determined by a fair understanding of its plain language. Although I acknowledge a duty to prefer constitutionally inoffensive interpretations of the law when such interpretations are consistent with statutory language, I do not consider that duty to be implicated here, because the statute is unambiguous. I simply cannot bring myself to rewrite a law to make it constitutional—a different exercise entirely from a determination of whether the law as written is unconstitutional. Accordingly, I think it inappropriate to address unpresented questions of constitutional law not necessary to a fair resolution of the issues actually raised in this case.

For the reasons given, I dissent to the plurality's disposition of both cases here under review. I would affirm the Fort Worth Court of Appeals in *Hunter* and reverse the Dallas Court of Appeals in *Grunsfeld* with instructions that it consider any points of error not reached in its original opinion.